**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs, the putative FLSA*
*Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS LOPEZ and BOBBY MORRISON, Individually and On Behalf of All Others Similarly Situated,**<br><br>                              **Plaintiffs,**<br><br>-against-<br><br>**UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES and ALLIEDBARTON SECURITY SERVICES LLC, Jointly and Severally,**<br><br>                              **Defendants.** | **CLASS & COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Luis Lopez and Bobby Morrison (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former Tour Supervisors who performed work for Defendants pursuant to Defendants' contracts with the Port Authority of New York and New Jersey at LaGuardia Airport ("LGA"). Throughout the relevant time period, Plaintiffs were not paid regular

and/or overtime wages for all hours worked each day. Specifically, pursuant to Defendants' policy, Plaintiffs were not paid for pre-shift work performed during mandatory debrief meetings and post-shift off-the-clock work. In addition, despite being told by Defendants' upper management that Plaintiffs were entitled to a thirty (30) minute meal break, Plaintiffs were not permitted to take their meal breaks since there was no one to replace them or cover their post for such breaks. Nonetheless, Defendants automatically deducted thirty (30) minutes for a meal break for each work day regardless of whether Plaintiffs were able to take a break during the workday.

2.      In addition, since Plaintiffs' paystubs did not include time worked during mandatory debrief meetings or off-the-clock work performed at the end of their shift and automatically deducted meal breaks they were not permitted to take, the wage statements that Plaintiffs received did not show an accurate accounting of all hours that they worked during each workweek.

3.      Plaintiffs bring this action to recover overtime pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

4.      Plaintiffs also bring claims for Defendants' failure to provide proper wage statements pursuant to NYLL §§ 190 *et seq*.

5.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all Tour Supervisors and Construction Lead employees who performed work for Defendants in New York during the NYLL limitations period.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337

and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order

202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

<u>**THE PARTIES**</u>

<u>**Plaintiffs:**</u>

11.     <u>Plaintiff Luis Lopez</u> ("Lopez") was, at all relevant times, an adult individual residing in Queens County, New York.

12.     <u>Plaintiff Bobby Morrison</u> ("Morrison") was, at all relevant times, an adult individual residing in Queens County, New York.

13.     Throughout the relevant time period, Plaintiffs performed work for Defendants at LGA. Plaintiffs were initially stationed at LGA's Central Terminal B Building until the building's revitalization and reconstruction commenced, which resulted in their transfer to the South Hangar 7 building.

14.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

<u>**Defendants:**</u>

15.     <u>Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services</u> ("Allied Universal") is an active Delaware corporation registered with the New York State Department of State on November 6, 2012.

16.     <u>Defendant AlliedBarton Security Services LLC</u> ("AlliedBarton" and, together with Allied Universal, "Allied" or the "Defendants") is an active Delaware corporation registered with the New York State Department of State on May 10, 2006. During the relevant time period, AlliedBarton's New York branch office was located at 229 W 36th Street, Floor 11, New York 10018.

17.     Upon information and belief, in or around 2016, AlliedBarton merged with Universal Services of America and since then has operated as Allied Universal.

18.     Upon information and belief, at all relevant times, the Defendants have had gross revenues in excess of $500,000.00.

19.     Defendants' operations are interrelated and unified.

20.     Upon information and belief, the Defendants are owned, operated, and managed by the same individuals at the same corporate office, utilizing the same corporate practices and policies.

21.     At all relevant times, the Defendants have been an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

22.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

23.     During the relevant time period, Plaintiffs received paystubs from AlliedBarton Security Services LLC and Universal Protection Service, LLC.

24.     At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

25.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since April 7, 2019 and through the entry of judgment in this case (the "Collective Action Period") who performed work as Tour Supervisors, Fill-In Tour Supervisors, Operations Assistants, or Construction Leads at New York airports pursuant to Defendants' contracts with The Port Authority of NY and NJ (the "Collective Action Members").

26.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for all work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

27.     Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

28.     Since Defendants only compensated Plaintiffs and Defendants' other Tour Supervisors or fill-in Tour Supervisors, non-exempt Office and/or Operations Assistants, or Construction Lead employees up to a forty (40)-hour workweek, Plaintiffs and the Collective Action Members were not paid for a significant number of work hours each week. Specifically, although Defendants required that Plaintiffs and the Collective Action Members attend pre-shift Debrief Meetings (hereinafter referred to as the "Debrief Meetings") on a daily basis, and to perform off-the-clock work at the end of their shifts during portions of their employment period, Plaintiffs and the Collective Action Members were not paid wages of any kind for this time worked. Furthermore, although Plaintiffs and the Collective Action Members were told that they were entitled to a meal break of approximately thirty (30) minutes, at no point were Plaintiffs and the Collective Action Members permitted to take their meals breaks since there was no staff member to release them from their posts. Nonetheless, pursuant to Defendants' policy, the thirty (30) minute meal break per shift was automatically deducted, resulting in unpaid work hours, including overtime hours during weeks when Plaintiffs and Collective Action Members worked 40 or more hours.

## **FED. R. CIV. P. 23 CLASS ALLEGATIONS**

29.     Pursuant to the NYLL and the New York common law, Plaintiffs bring their Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since August 23, 2015 and through the entry of judgment in this case (the "Class Period") who performed work as Tour Supervisors, Fill-In Tour Supervisors, Operations Assistants, or Construction Leads at New York airports pursuant to Defendants' contracts with The Port Authority of NY and NJ (the "Class Members").

30.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

31.     The Class Members are so numerous that joinder of all members is impracticable.

32.     Upon information and belief, there are in excess of forty (40) Class Members.

33.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

d.  whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members for all hours worked over forty (40) in a given week;

e.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

f.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were Tour Supervisors and/or fill-in Tour Supervisor, Operations Assistants, or Construction Lead employees of Defendants subject to Defendants' corporate timekeeping and payroll policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime wages for all hours worked over forty (40) in a given workweek; were not paid wages of any kind for certain hours worked, including time spent in mandatory Debrief Meetings held prior to the start of each shift or off-the-clock work at the end of their shift; and were not provided with proper wage statements that accurately reflected their total hours worked each week. If Defendants are liable to the Class Representatives for the Class claims enumerated in this Complaint, they are also liable to all Class Members. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

35.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

36.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

37.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

38.    Defendants are sophisticated parties with substantial resources. Meanwhile, the individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendants.

39.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

## Defendants' Contracts with The Port Authority of New York and New Jersey

40.    Upon information and belief, Allied services or has serviced over forty (40) airports in the United States, including but not limited to LGA, John F. Kennedy International Airport (JFK), Rochester International Airport, Newark Liberty International Airport, Jacksonville International Airport, Ft. Lauderdale-Hollywood International Airport, Miami International Airport, and many more.

41.    According to their website, Defendants operate in more than 90 countries, and employ more than 800,000 employees.

42.    In or around August 2013, the Port Authority of New York and New Jersey (the "PANYNJ") awarded AlliedBarton a four (4)-year contract to perform "unarmed, uniformed security guard services at JFK, LGA, Newark Liberty International, Stewart International and

Teterboro Airports", which began approximately on September 1, 2013.

43.     As part of its contract with the PANYNJ, AlliedBarton was to hire "Airport Security Agents, Lead Airport Security Agents, Airport Security Operations Center Agents, Identification Office Specialists, Operations Assistants, Tour Supervisors, Human Resources Managers, Human Resources Assistants" as well as other specified classifications of employees.

44.     Upon information and belief, the PANYNJ renewed the contract, which remained active throughout the relevant time period up until approximately December 31, 2021.

**Plaintiffs' Work for Defendants**

45.     **Plaintiff Lopez** worked for Defendants from in or around March 2013 through on or about December 31, 2021 (the "Lopez Employment Period"). Throughout the Lopez Employment Period, Plaintiff Lopez was employed in the position of Tour Supervisor.

46.     As a Tour Supervisor, Plaintiff Lopez's duties included but were not limited to reporting and maintaining daily logs of happenings or incidents during each shift, issuing equipment to agents and logging equipment assignment, coordinating and collaborating with security agents, creating and reviewing written employee reports, issuing equipment to security agents and maintain records of same, ensuring staff attendance and lateness.

47.     Throughout the Lopez Employment Period, Plaintiff Lopez typically worked five (5) days per week, with Monday and Sunday off, from approximately 9:30 p.m. through approximately 6:00 a.m. or from approximately 10:30 p.m. through approximately 7:00 a.m., for a total of approximately forty-five (45) hours per week and sometimes more, including the mandatory thirty (30) minute pre-shift Debrief Meeting held each shift, which was not included as part of the total hours worked each week recorded in Plaintiff Lopez's paystubs.

48.     As a Tour Supervisor, Plaintiff Lopez was required to arrive at the LGA Terminal

no later than thirty (30) minutes prior to the start of his shift to attend the Debrief Meetings, as specified above.

49.    From the start of the Lopez Employment Period until approximately in or around July 2018 when Plaintiff Lopez was informed of a policy change in Defendants' time recording practices, Plaintiff Lopez was often required to perform post shift off-the-clock work for between approximately thirty (30) minutes and up to one (1) hour at the end of his shift. On average, although Plaintiff Lopez was required to perform this off-the-clock work at least twice per week, Plaintiff Lopez received no wages of any kind for this work. The post shift off-the-clock work typically included time spent after any eight (8) hour shift addressing any accidents or emergencies for which Plaintiff Lopez was required to complete and submit an emergency accident report, as well as driving Security Agents to/from different airport posts and monitoring their duties.

50.    From the start of the Lopez Employment Period until approximately July 2018, Defendants did not pay Plaintiff Lopez wages of any kind for the one (1) to two (2) additional hours per week he worked performing the post shift off-the-clock work.

51.    Throughout the relevant time period, Plaintiff Lopez was paid via a payroll check and was provided access to his paystubs with via an Electronic Hub system, which typically reflected up to a total of forty (40) hours worked per week.

52.    Plaintiff Lopez's paystubs show that he was paid by "Universal Protection Service, LLC, 161 Washington Street, Suite 600, Eight Tower Bridge, Conshohocken, PA 19428" and by "AlliedBarton Security Services LLC, 161 Washington Street, Suite 600, Eight Tower Bridge, Conshohocken, PA 19428".

53.    Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $34.16 per hour in 2016.

11

54.     Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $34.85 per hour in 2017.

55.     Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $35.30 per hour in 2018.

56.     Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $35.77 per hour in 2019.

57.     Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $36.31 per hour in 2020.

58.     Plaintiff Lopez's paystubs show he was paid a regular hourly rate of $36.31 per hour in 2021.

59.     Throughout the Lopez Employment Period, although Plaintiff Lopez was rarely, if ever, able to take a thirty (30)-minute uninterrupted meal break, Defendants automatically deducted a thirty (30) minute meal break from his daily total hours worked. Defendants' automatic deduction policy for meal breaks, thus, resulted in significant unpaid regular and overtime wages.

60.     **Plaintiff Morrison** worked for Defendants from in or around November 2015 until on or about December 31, 2021 (the "Morrison Employment Period").

61.     From the start of the Morrison Employment Period until in or around 2018, Plaintiff Morrison worked as an Assistant Security Agent. In 2018, Plaintiff Morrison was promoted to the title of Office Assistant and during certain shifts also performed work as a fill-in Tour Supervisor.

62.     From in or around January 2020 until the present, Plaintiff Morrison has worked as a full-time Tour Supervisor, during which time his duties included reporting and maintaining daily logs of happenings or incidents during each shift, issuing equipment to agents and logging equipment assignment, coordinating and collaborating with security agents and managers, creating

and reviewing written employee reports, issuing equipment to security agents and maintain records of same, ensuring staff attendance and lateness.

63.     From the start of the Morrison Employment Period until he was promoted to the Tour Supervisor position in or around January 2020, Plaintiff typically worked between three (3) to five (5) days per week, for a total of between approximately twenty-four (24) to forty (40) hours per week, and sometimes more depending on staff shortages.

64.     During the portion of the Morrison Employment Period while employed as a Tour Supervisor, Plaintiff Morrison typically worked between approximately thirty (30) to forty-five (45) hours per week, excluding time worked during the Debrief Meetings, as elaborated below. For approximately four (4) non-consecutive weeks in 2021, Plaintiff Morrison worked between twenty-two to twenty-four (22-24) hours per week, excluding the Debrief Meeting time.

65.     Plaintiff Morrison's paystubs show he was paid regular hourly rates of $18.49, $19.050, and $21.22, and $21.86 per hour in 2016. Plaintiff Morrison also received a $12.33 hourly rate for employee trainings.

66.     Plaintiff Morrison's paystubs show he was paid regular hourly rates of $19.05, $19.49, $21.86, $22.31, $34.16, and $34.85 per hour in 2017.

67.     Plaintiff Morrison's paystubs show he was paid a regular hourly rate of $35.30 per hour in 2018.

68.     Plaintiff Morrison's paystubs show he was paid regular hourly rates of $19.49, $20.23 and $35.76 per hour in 2019.

69.     Plaintiff Morrison's paystubs show he was paid regular hourly rates of $22.87, $35.76, $35.77, $36.31 per hour in 2020.

70.     Plaintiff Morrison's paystubs show he was paid regular hourly rates of $36.31 and

$37.06 per hour in 2021.

71.     Throughout the Morrison Employment Period, especially when working as a fill-in Tour Supervisor and full-time Tour Supervisor, although Plaintiff Morrison was rarely, if ever, able to take a thirty (30)-minute uninterrupted meal break, Defendants automatically deducted a thirty (30) minute meal break from his daily total hours worked. Defendants' automatic deduction policy for meal breaks, thus, resulted in significant unpaid regular and overtime wages.

72.     Throughout the relevant time period, Plaintiffs were paid via a payroll check and received the copies of their paystubs electronically, via an Electronic-Hub portal.

**Defendants' Unlawful Timekeeping Policies**

73.     In or around March 2016, members of Defendants' management team circulated a memorandum stating that certain employees were required to attend mandatory Debrief Meetings prior to the start of their assigned shifts. Specifically, the memorandum stated: "All supervisors and Construction Leads were to report for duty ½ hour before the start of [their] shifts in order to ensure a thorough and complete knowledge transfer from shift to shift" and so that the employees in the incoming shift were informed of any events occurring in the preceding tour.

74.     As a Tour Supervisor, Plaintiff Lopez was required to attend all Debrief Meetings, along with Defendants' employees who worked as Tour Supervisors, Construction Leads, and other employees who worked in different hourly positions who were required to perform services as fill-in Tour Supervisors.

75.     During the portions of his employment period when he worked as a Fill-In Tour Supervisor and later as a full-time Tour Supervisor, Plaintiff Morrison was required to attend all Debrief Meetings.

76.     During the mandatory Debrief Meetings, the incoming shift employees employed

as Tour Supervisors and Construction Leads were provided with all significant events and complaints, malfunction reports, and causes of concern that were raised in the preceding shift. In addition, employees were required to retrieve any vehicles that needed to be stationed in designated posts, respond to all communications, inquiries, requests or instructions from the PANYNJ Officials and personnel, verify that employees that were assigned to the incoming shift had reported to the shift or otherwise seek coverage, verifying work credentials and that each agent was prepared to work, including but not limited to checking that each agent wore the mandatory uniforms, create preliminary reports for their assigned shift, report and communicate unusual or unsafe conditions, and ensure equipment functionality.

77.    As Tour Supervisors, Plaintiffs Lopez and Morrison did not receive any wages for the thirty (30)-minute Debrief Meetings held prior to the start of their regular shift hours.

78.    Defendants required Plaintiffs and the Collective and Class Members to report to work no later than thirty (30) minutes prior to the start of their shifts to perform pre-shift work but did not pay Plaintiffs and the Collective and Class Members wages for this additional time.

79.    Defendants' failure to pay wages of any kind for time spent performing work during the Debrief Meetings and overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a corporate policy that applied to all employees who performed work for Defendants as Tour Supervisors, Construction Leads, and fill-in Tour Supervisors.

80.    At various times during the relevant time period, Defendants' timekeeping and payroll policies were structured in a manner that avoided paying Plaintiffs and other employees who worked for Defendants as Tour Supervisors, Fill-In Tour Supervisors, as well as Operations Assistants, for their total hours worked, resulting in a substantial underpayment of regular and

15

overtime wages.

81.     In or around July 2018, Defendants implemented a time sheet policy change which, upon information and belief, was at the direction of PANYNJ.   In particular, a memorandum from July 2018 regarding the change in timesheet policy stated as follows:

> "[T]he company and Port Authority are standardizing all time sheet [sic] across the entire portfolio.
>
> So as not to be confused, the time sheet is designed to record 2 times, the actual time an employee arrives and the time the shift starts, that process is also repeated for the end of the shift times as well.
>
> **We are still only paying employees for the times assigned to their shifts <u>not</u> for the actual time they arrive on the site for work (unless they are late).** The only time an employee will be paid for the actual time (start or finish) is when its [sic] approved by a supervisor or manager...
>
> **We are NOT paying employees for time beyond their shift's [sic] for unapproved activities.**
>
> (emphasis supplied).

82.     Accordingly, although Plaintiffs began to be able to record the pre- and post-shift work, they still were not compensated for such time pursuant to Defendants' clear policy of discouraging payment for any time other than the assigned shift time.

83.     Since Defendants did not pay Plaintiffs and Class Members for the actual time worked each week, at no time did Plaintiffs' or Class Members' paystubs reflect their actual hours worked.

## FIRST CAUSE OF ACTION
## <u>FAIR LABOR STANDARDS ACT – UNPAID OVERTIME</u>
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

84.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by improperly failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

86.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

87.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

89.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

91.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing

to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

92.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

93.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3).

95.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of New York State law;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

i.    An award of prejudgment and post-judgment interest;

j.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

k.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
        April 7, 2022

                                Respectfully submitted,

                                **PELTON GRAHAM LLC**


                                By: _____
                                Brent E. Pelton (BP 1055)
                                pelton@peltongraham.com
                                Taylor B. Graham (TG 9607)
                                graham@peltongraham.com
                                111 Broadway, Suite 1503
                                New York, New York 10006
                                Telephone: (212) 385-9700

Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered**

**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of Universal Protection Service LLC d/b/a AlliedUniversal Security Services and AlliedBarton Security Services LLC are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and F.R.C.P. 23 class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of Universal Protection Service LLC d/b/a AlliedUniversal Security Services and AlliedBarton Security Services LLC, and to charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporation has concluded within 180 days of the filing date of this complaint.

Dated: April 7, 2022

_____
Brent E. Pelton, Esq.

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Allied Barton Security Services LLC, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me regular and/or overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

E47D89EE57254BF...

Luis Lopez

_____          _____

Signature                                                       Printed Name

DocuSign Envelope ID: 6C9595A2-BEAB-41F8-A6D4-C28176EC4DE5

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Allied Barton Security Services LLC, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me regular and/or overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

684D10EB48E74D0...
_____
Signature

Bobby Morrison
_____
Printed Name