IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS LOPEZ and BOBBY MORRISON, Individually and On Behalf of All Others Similarly Situated,<br><br>      **Plaintiffs,**<br><br>-against-<br><br>UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES and ALLIEDBARTON SECURITY SERVICES LLC, Jointly and Severally,<br><br>      **Defendants.** | Case No. 1:22-cv-1990 (LDH)(SJB) |

**DECLARATION OF BRENT E. PELTON IN SUPPORT OF THE PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

I, Brent E. Pelton, declare as follows:

1. I am an attorney admitted before this Court. I am a member of the firm of Pelton Graham LLC ("Pelton Graham") in New York, New York, Plaintiffs' counsel herein. Pelton Graham is a New York City based law firm that devotes at least ninety percent (90%) of its practice to representing plaintiffs in individual, collective and class action litigation seeking to recover unpaid wages, overtime compensation, and damages for violations of the wage laws.

2. I am one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims against Defendants in the following action: *Lopez, et al. v. Universal Protection Service, LLC, et al.*, 22-cv1990 (LDH)(SJB) (the "Action"), currently pending before this Court.

3. The Plaintiffs allege that Defendants failed to pay their Operation Assistants, Tour Supervisors, and Construction Leads at LaGuardia International Airport (LGA) for all time that they worked each day, resulting in unpaid regular "gap-time" wages in violation of the New York Labor Law ("NYLL") and unpaid overtime premiums for hours worked over forty (40) in a

workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and NYLL. (*See generally* Dkt. No. 1). Plaintiffs further allege that Defendants failed to provide accurate wage statements reflecting all of their hours worked each pay period, in violation of the NYLL. (*Id.*).

4.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Pelton Graham LLC's Qualifications**

5.  Pelton Graham has substantial experience prosecuting and settling employment class actions, including large wage and hour class actions.

6.  The firm is currently representing plaintiffs in wage and hour litigation within the Southern and Eastern Districts of New York, the New York State Supreme Courts of New York, Kings, Queens, and Bronx counties, as well as in the Superior Court of the State of California. Most of our wage and hour cases are handled as collective actions, hybrid Rule 23 class/FLSA collective actions, or NYLL § 901 class actions.

7.  Pelton Graham LLC is presently advancing the costs of the litigation. Pelton Graham LLC is well-suited to advance subsequent necessary costs to ensure the continued viability of this litigation.

8.  Pelton Graham LLC has committed significant time and work to identifying, investigating and litigating Plaintiffs' claims and is fully prepared to continue to litigate this action and advocate for the interests of the Plaintiffs and Class and Collective Action Members.

9.  Pelton Graham has served as lead or co-lead counsel on numerous wage and hour cases that district courts have certified as class actions and/or collective actions. *See e.g.*, *Porter v. MooreGroup Corp.,* No. 17-cv-7405 (KAM)(VMS), 2021 U.S. Dist. LEXIS 151187 (E.D.N.Y. Aug. 11, 2021); *Omar v. 1 Front St. Grimaldi, Inc.,* No. 16-cv-5824 (LDH)(CLP), 2019 U.S. Dist.

LEXIS 4242 (E.D.N.Y. Jan. 8, 2019); *Adedayo, et al. v. Pioneer Homecare, Inc., et al.* No. 517507/2019 (RV) (Kings Cty. Sup. Ct.); *Campos, et al. v. BKUK 3 Corp. et al.* No. 18-cv-4036 (JGK) (S.D.N.Y.); *Khalid v. DJ Shirley 1 Inc.,* No. 15-cv-5926 (SJF)(GRB), 2018 U.S. Dist. LEXIS 230700 (E.D.N.Y. June 26, 2018); *Herman, et al. v. Judlau Contracting, Inc.*, No. 652249/2017 (AB) (N.Y. Cty. Sup. Ct.); *Mendez, et al. v. MCSS Rest. Corp., et al*, No. 16-cv-2746, (RPK) (E.D.N.Y.); *Balverde v. Lunella Ristorante, Inc.,* No. 15-cv-5518 (ER), 2017 U.S. Dist. LEXIS 59778 (S.D.N.Y. April 19, 2017); *Reyes v. City of Rye,* No. 13-cv-9051 (NSR), 2016 U.S. Dist. LEXIS 99428 (S.D.N.Y. July 28, 2016); among many others.

**Procedural History**

10. Luis Lopez and Bobby Morrison (the "Named Plaintiffs") commenced the Action on April 7, 2022, as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA by filing the Collective and Class Action Complaint (the "Complaint"). (Dkt. No. 1). Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services and AlliedBarton Security Services LLC (collectively, the "Defendants" or "Allied") filed an Answer to the Complaint on May 4, 2022, disputing the material allegations. (Dkt. No. 9).

11. The Court held an initial conference before Magistrate Judge Sanket J. Bulsara on July 6, 2022, wherein the parties discussed a proposed discovery schedule and their desire to explore early settlement negotiations. (*See* Dkt. Entry Dated 07/06/2022). To that end, Magistrate Judge Bulsara entered the parties' proposed discovery schedule and scheduled a settlement conference for November 7, 2022. (*Id.*).

12. On November 2, 2022, the parties sought a 4-week adjournment of the settlement conference. (Dkt. No. 25). The Court granted the adjournment and rescheduled the settlement conference for December 15, 2022. (Dkt. Entry Dated 11/03/2022). Soon thereafter, the parties

agreed to hold a private mediation and sought adjournment of the settlement conference (Dkt. No. 26), which was adjourned *sine die*. (Dkt. Entry Dated 11/11/2022).

13. On February 13, 2023, the parties informed the Court that they had reached a settlement in principle. (Dkt. No. 29).

14. Pursuant to the parties' stipulation, on March 16, 2023, Plaintiffs filed an Amended Complaint, which included a new cause of action for unpaid "gap-time" wages, pursuant to the NYLL. (See Dkt. No. 32 at Count III). Defendants' deadline to respond to the Amended Complaint is April 14, 2023. (Dkt. Entry Dated 03/16/2023).

**History of Investigation, Discovery and Litigation**

15. Before and during formal litigation, Plaintiffs' Counsel has thoroughly investigated the merits of the potential claims and defenses. We focused our initial investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled and Defendants' potential liability. We conducted interviews with the Named Plaintiffs and, later, Opt-in Plaintiffs regarding the hours that they worked, the wages they were paid, and other information relevant to their claims.

16. Following the initial conference on July 6, 2022, in preparation for the November settlement conference, the parties exchanged document discovery for the Named and Opt-In Plaintiffs, and Defendants provided wage and hour records relating to the putative class members, with their names redacted. During this period, a total of thirteen (13) individuals exercised their right to join the action by filing consent to become party plaintiff forms with the Court, pursuant to Section 216(b) of the FLSA (the "Opt-in Plaintiffs"). (Dkt. Nos. 10-16, 19, 20, 23, 24, 27, 28).

17. Throughout the Action, the Named Plaintiffs have assisted with the preparation of the complaint, assisted with the factual investigations of the claims, produced documents, attended

the three (3) settlement and the mediation proceedings, and communicated with the Opt-in Plaintiffs and Class Members as needed throughout the pendency of the Action.

**Settlement Negotiations**

18. Throughout the pendency of this Action, the parties have engaged in informal and formal settlement negotiations. Although they had initially agreed to attempt settlement with the Court's assistance, the parties agreed to attend a private mediation session to see if a resolution was possible prior to the settlement conference.

19. My office prepared a damages analyses using time and pay records provided by Defendants, as well as information gathered from the Named and Opt-in Plaintiffs. In this way, Plaintiffs calculated unpaid regular wages, unpaid overtime, and statutory wage statement damages.

20. The damages analysis relied upon assumptions as to the amount of off-the-clock time that they spent either pre- or post-shift or on account of unpaid meal breaks, which assumptions Defendants strongly contest. In particular, Defendants contest that Plaintiffs performed any work "off-the-clock" before or after their scheduled shifts. Specifically, Defendants assert that they had policies in place to ensure that Plaintiffs were compensated for all time worked and were provided coverage in order to take required breaks, such that they did not have to work through breaks. Defendants further assert that any such time that was allegedly worked and not paid would have been based on an individualized situation that was counter to Defendants' policies, such that collective and/or class treatment is inappropriate.

21. Following Plaintiffs' completion of their analysis of the class-wide records, on or about November 23, 2022, Plaintiffs exchanged with Defendants their damages computation and initial settlement demand.

22. Plaintiffs' class-wide damages analysis calculated a total of $162,807.09 in unpaid regular "gap-time" wage damages and $470,606.64 in overtime damages, for an unpaid wage total of $634,230.49, plus $273,642.86 in wage statement damages. In total, with liquidated damages and prejudgment interest, Plaintiffs calculated total class-wide damages of $1,780,010.30.

23. The settlement amount represents full recovery of Plaintiffs' damages for unpaid regular and overtime premiums.

24. Even after subtracting Plaintiffs' Counsel's actual litigation costs of $9,589.50, approximately 1/3 for attorneys' fees after the costs are subtracted (i.e., $213,470.16), service awards totaling $5,000, and administration costs of approximately $10,000, the remaining portion of the settlement fund (i.e, $411,940.34), still represents approximately 65% of the class and collective action members' total unpaid wage damages.

25. On December 7, 2022, the parties attended a full-day mediation before Stephen Sonnenberg, Esq. of JAMS, during which they reached a settlement in principle. Over the next several weeks, the parties continued to negotiate the non-monetary terms of their agreement, which were memorialized in a Memorandum of Understanding ("MOU"), which was signed by the parties. The signed MOU is attached hereto as **Exhibit A**.

26. Thereafter, pursuant to the MOU, the parties drafted a formal settlement agreement and sought proposals from several settlement administrators. After additional negotiations concerning the administration of the settlement, the parties finalized the complete terms of their agreement in the Settlement Agreement and Release ("Settlement Agreement"), which is attached hereto as **Exhibit B**.

27. As is evident by the settlement negotiations and involvement of a mediator in the settlement discussions, at all times during the settlement negotiation process, settlement negotiations were conducted on an arm's-length basis.

**The Terms of the Settlement Agreement**

28. The parties have agreed to settle the claims of the Named and Opt-in Plaintiffs, as well as an FLSA Collective of all persons formerly employed as Operation Assistants, Tour Supervisors, or Construction Leads at LaGuardia Airport by Defendants at any time between April 7, 2019 and December 31, 2021 (the "FLSA Collective" or "FLSA Collective Members")(Ex. B ¶ 2.17), and a Fed. R. Civ. P. 23 class of all persons formerly employed as Operation Assistants, Tour Supervisors, or Construction Leads at LaGuardia Airport by Defendants at any time between August 23, 2015 and December 31, 2021 (the "Class" or "Class Members"). (Ex. B ¶ 2.4).

29. At this time, the parties believe that there are approximately sixty-four (64) Class Members who are eligible to participate in this Settlement, thirty (30) of which (including the 13 Opt-in Plaintiffs) are members of the Collective.

30. The Settlement Agreement provides for a payment of no more than $650,000.00 to settle this case (the "Settlement Amount"). (Ex. B ¶ 2.27). After attorneys' fees and costs, fees for settlement administration, employer portion of payroll taxes and service awards for the Named Plaintiffs, the remaining funds (the "Net Settlement Amount") will be allocated among the Class and FLSA Collective members. (*Id.* ¶¶ 2.29, 4.1). Defendants will not be responsible for paying any amounts allocated to individuals who opt-out of the Settlement Class or fail to opt-in to the Settlement Collective, provided that in no event shall the amount deducted from the Total Settlement Amount exceeds 20% of the Net Settlement Amount. (Ex. A ¶ 2.28 (the "Funded Settlement Amount")).

31. All Class Members who do not timely opt-out of the Settlement ("Claimants") will be eligible to receive a payment from the settlement. (Ex. B ¶¶ 2.3, 4.1). In addition, all FLSA Collective Members who submit a Consent to Join Form and/or who already opted into the

litigation (the "Opt-in Claimants") will be eligible to receive a payment from the settlement. (Ex. A ¶¶ 2.21, 4.1)

32. In accordance with the parties' MOU, Plaintiffs' Counsel created a formula to allocate the Net Settlement Amount among Class and FLSA Collective Members. (Ex. A ¶ 8). Specifically, the formula provides for an allocation of the settlement funds based on the number of workweeks in which the Class and FLSA Collective Members worked for Defendants. (Ex. B ¶ 4.3). Utilizing the workweeks of each Class and FLSA Collective Member tracks the actual damages that Plaintiffs' Counsel calculated for the Class because the alleged unpaid wages were incurred for each shift worked and were consistent throughout the Class Period. FLSA Collective Members receive a 25% enhancement for each workweek during the FLSA Collective Period to compensate them for their affirmative participation in the Action and their additional release of their FLSA Claims. (Ex. B ¶ 4.3(B)).

33. In addition to their individualized awards under the allocation formula, the Named Plaintiffs will apply for modest enhancement payments ("Enhancement Awards") in recognition of the services they rendered on behalf of the class and in exchange for a general release of their claims against Defendants. (Ex. B ¶ 4.2). The two (2) Named Plaintiffs will apply to receive two thousand five hundred dollars ($2,500.00) to each Named Plaintiff for a total of five thousand dollars ($5,000.00) as Enhancement Awards from the Settlement Amount. (*Id.*).

34. The parties have agreed to engage CPT Group ("CPT" or the "Settlement Administrator") to administer the Settlement by, *inter alia*, disseminating all Notices and Consent to Join Forms to Class and FLSA Collective Members, receiving all Consent to Join Forms from FLSA Collective Members, receiving any Opt-out statements or objections from Class Members, receiving Defendants' payment of the Funded Settlement Amount, calculating the amount of each Claimant and Opt-in Claimant's Settlement Checks, mailing settlement payments to each Claimant

and Opt-in Claimant, tax withholdings and payments, and communicating as necessary with the parties and each Claimants and Opt-in Claimants to facilitate the Settlement. (Ex. B ¶ 3.3).

35. Before choosing CPT Group, the parties both obtained proposals from potential settlement administrators in order to choose the most cost-effective company to administer the settlement. CPT Group's proposal was the most cost-effective and their reasonable costs are to be paid from the Net Settlement Amount. (Ex. B ¶ 2.29).

36. Within twenty (20) days of the Court granting preliminary approval of the proposed Settlement Agreement, the Settlement Administrator will mail the Notice of Proposed Settlement to all Class Members, with a Consent to Join Form included to all FLSA Collective Members. (Ex. B ¶ 2.19, 3.4, 3.6). The Notice of Proposed Class and Collective Settlement ("Proposed Notice") is attached hereto as **Exhibit C** and the Consent to Join Form is attached hereto as **Exhibit D**.

37. The Proposed Notice notifies Class Members of information including the procedures and deadlines for objecting and opting-out of the settlement, the procedures and deadlines for FLSA Collective Members to return a Consent to Join Form in order to participate in the Collective action portion of the settlement, the date of the Final Approval and Fairness Hearing, the Settlement Amount, and the manner in which the Net Settlement Fund shall be allocated. (*See* Ex. C).

38. Class Members will have sixty (60) days from the Settlement Administrator's mailing of the Notice of Proposed Settlement to opt-out of the Settlement. (Ex. B ¶ 3.7). All Class Members who do not timely opt-out of the Action will be deemed to release state wage claims consisting of all claims arising under the NYLL and New York state laws relating to wage and hour damages during the Class Period. (Ex. B ¶¶ 2.22, 2.26, 3.7(C), 5.1, 5.3). In addition, all Opt-in Claimants will release their FLSA Claims during the FLSA Collective Period. (Ex. B ¶¶ 2.16,

2.22, 3.9(C), 5.2, 5.3). Finally, in exchange for them receiving service awards, the Named Plaintiffs shall provide a general release of all claims against Defendants. (Ex. B ¶ 4.2).

39. Plaintiffs' Counsel will apply for reimbursement from the Settlement Fund for their actual litigation costs of up to $10,000, plus one-third (1/3) of the Settlement Fund after the deduction of actual litigation costs. (Ex. B ¶ 4.5). Plaintiffs' Counsel has not entered into side agreements or other agreements regarding attorneys' fees and costs aside from the terms set forth in the Settlement Agreement.

I declare under penalty of perjury, under 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 21st day of March, 2023.
New York, New York

                                              */s/ Brent E. Pelton*
                                              Brent E. Pelton

                                              **PELTON GRAHAM LLC**
                                              111 Broadway, Suite 1503
                                              New York, NY 10006
                                              Telephone: (212) 385-9700
                                              Facsimile: (212) 385-0800
                                              Email: pelton@peltongraham.com

                                              *Attorneys for Plaintiffs and the putative*
                                              *FLSA Collective and Class*