# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**LUIS LOPEZ and BOBBY MORRISON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

**Plaintiffs,**

Case No. 1:22-cv-1990 (LDH)(SJB)

-against-

**UNIVERSAL PROTECTION SERVICE,**
**LLC d/b/a ALLIED UNIVERSAL**
**SECURITY SERVICES and**
**ALLIEDBARTON SECURITY**
**SERVICES LLC, Jointly and Severally,**

**Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006

*Attorneys for Plaintiffs and the putative FLSA Collective and Class*

# TABLE OF CONTENTS

**Page**

Table of Authorities…………………………………………………………….............. iii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................2

    I.     Procedural History ......................................................................2

    II.    Overview of Investigation, Litigation and Discovery............................2

    III.   Settlement Negotiations ................................................................3

SUMMARY OF THE SETTLEMENT TERMS ...........................................................4

    I.     The Settlement Amount ................................................................4

    II.    Releases.....................................................................................5

    III.   Notice ........................................................................................6

    IV.   Eligible Employees ......................................................................6

    V.    Fees and Costs ............................................................................7

    VI.   Settlement Administration Costs ....................................................7

    VII.  Service Awards ..........................................................................8

CLASS ACTION SETTLEMENT PROCEDURE ......................................................8

ARGUMENT....................................................................................................9

I.     Preliminary Approval of the Settlement Is Appropriate ...............................9

    A.    Legal Standards Under Rule 23 Amendments.........................................9

    B.    The Settlement Is Fair, Reasonable, and Adequate ..............................10

        1.   The Named Plaintiffs and Class Counsel Have Adequately
           Represented the Class ......................................................10

        2.   The Settlement was Negotiated at Arm's Length...........................11

        3.   The Relief for Class Members is Adequate and Fair ......................11

      4.   Class Members Have an Opportunity to Opt-Out............................................13

  C.     The Settlement Satisfies the *Grinnell* Factors ........................................14

      1.   Litigation Through Trial Will Be Complex, Costly, and Long
(*Grinnell* Factor 1) ........................................................................14

      2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ................15

      3.   Discovery Has Advanced Far Enough To Allow The Parties To
Resolve The Case Responsibly (*Grinnell* Factor 3) .......................................15

      4.   Plaintiffs Would Face Real Risks If the Case Proceeded
(*Grinnell* Factors 4 and 5)....................................................................16

      5.   Establishing A Class and Maintaining It Through Trial Would Not Be
Simple  (*Grinnell* Factor 6)................................................................16

      6.   The Defendants' Ability to Withstand A Greater Judgment  (*Grinnell*
Factor 7)........................................................................................16

      7.   The Settlement Amount Is Substantial, Even In Light of the Best
Possible Recovery and the Attendant Risks of Litigation
(*Grinnell* Factors 8 and 9)....................................................................17

II.    Conditional Certification of the Class Is Appropriate ........................................17

  A.     Numerosity..................................................................................19

  B.     Commonality................................................................................19

  C.     Typicality....................................................................................19

  D.     Adequacy ....................................................................................20

  E.     Certification is Proper Under Rule 23(b)(3) ........................................21

      1.   Common Questions Predominate ....................................................22

      2.   A Class Action Is a Superior Method ................................................23

  F.     Plaintiffs' Counsel Should Be Appointed as Class Counsel ..................23

III.   Conditional Certification of FLSA Collective Is Appropriate...........................24

IV.  The Proposed Notice Is Appropriate................................................................24

CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alleyne v. Time Moving & Storage, Inc.,*
    264 F.R.D. 41 (E.D.N.Y. 2010) ..........................................................................................10

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 620 (1997)....................................................................................18, 21, 23

*Ansoumana v. Gristede's Operating Corp.,*
    201 F.R.D. 81, 88 (S.D.N.Y. 2001) ...................................................................................21

*Auth. Police Benev. Ass'n, Inc., v. Port Auth. of N.Y. & N.J.,*
    698 F.2d 150, 153-54 (2d Cir. 1983) .................................................................................19

*Christina Asia Co. v. Jack Yun Ma,*
    No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) .........................14

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473, 483 (2d Cir. 1995).........................................................................................19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91, 108 (2d Cir. 2007).........................................................................................22

*Denney v. Deutsche Bank AG,*
    443 F.3d 253, 268 (2d Cir. 2006)........................................................................................21

*Flores v. Anjost Corp.,*
    2014 U.S. Dist. LEXIS 11026, *8 (S.D.N.Y. Jan. 29, 2014).....................................19, 20, 22

*Flores v. Mamma Lombardi's of Holbook, Inc.,*
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ................................................................................16

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................. *passim*

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S. 147, 157 n.13 (1982)...........................................................................................19

*Green v. Wolf Corp.,*
    406 F.2d 291, 301 (2d Cir. 1968)........................................................................................23

*Guaman v. Anja-Bar NYC*,
  2013 U.S. Dist. LEXIS 16206, at *15 (S.D.N.Y. Feb. 5, 2013) ..............................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ..............................................................................................9

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000).................................................................12, 15, 16, 17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. 2007) ..................................................................10

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)....................................................................................................18

*In re Visa Check/MasterMoney Antitrust Litig*,
  280 F.3d 124, 139 (2d Cir. 2001)..........................................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)..................................................................................................15

*Joel A. v. Guiliani*,
  218 F.3d 132 (2d Cir. 2000)....................................................................................................9

*Kochilas v. National Merchant Servs., Inc.*,
  No. 14 CV 0311, 2015 U.S. Dist. LEXIS 135553, 2015 WL 5821631, at *7
  (E.D.N.Y. Oct. 2, 2015) .......................................................................................................24

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................................................12

*Marisol A. v. Giuliani*,
  126 F.3d 372, 377 (2d Cir. 1997)....................................................................................19, 20

*Marriott v. County of Montgomery*,
  227 F.R.D. 159, 173 (N.D.N.Y. 2005)..................................................................................22

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243, 259 (S.D.N.Y. Jun. 23, 1998)....................................................................21

*Myers v. Hertz Corp.*,
  624 F.3d 537, 542 (2d Cir. 2010)..........................................................................................24

*Newman v. Stein*,

464 F.2d 689 (2d Cir. 1972) .......................................................................................12

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330, 339 (S.D.N.Y. 2004) ......................................................................22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26, 31 (E.D.N.Y. 2006) ..........................................................................19

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590, 598 (2d Cir. 1986) ..............................................................................21

*Sierra v. Spring Scaffolding LLC*,
No. 12 CV 05160, 2015 U.S. Dist. LEXIS 178006, 2015 WL 10912856, at *4
(E.D.N.Y. Sept. 30, 2015) ..........................................................................................24

*Toure v. Cent. Parking Sys.*,
No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sep. 28, 2007) ... 20-21

*Trinidad v. Breakaway Courier Sys., Inc.*,
2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007)..............................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)...................................................................................9, 10

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................... *passim*

**SECONDARY SOURCES**

Herbert B. Newberg & Alba Conte,
*Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002)..........................9, 18

Notes of Advisory Committee on 2018 Amendments
Rule 23 ..................................................................................................................9, 14

- vi -

## PRELIMINARY STATEMENT

The parties' proposed settlement resolves all claims in the action entitled *Lopez, et al. v. Universal Protection Service, LLC, et al.*, No. 22-cv-1990 (LDH)(SJB), currently pending before this Court (the "Action"). Following an exchange of class-wide discovery and substantial settlement negotiations, including a private mediation, the Parties have settled the claims of named plaintiffs Luis Lopez and Bobby Morrison (the "Named Plaintiffs"), thirteen (13) opt-in plaintiffs (the "Opt-in Plaintiffs"), and a proposed Fed. R. Civ. P. 23 class, set forth in more detail below (collectively with the Named Plaintiffs and Opt-in Plaintiffs, the "Plaintiffs"), against Universal Protection Service, LLC d/b/a Allied Universal Security Services and AlliedBarton Security Services LLC (the "Defendants"). The proposed settlement resolves all claims alleging that Defendants failed to pay Plaintiffs for all hours worked, including regular "gap-time" wages pursuant to the New York Labor Law ("NYLL") §§ 650, *et seq.*, overtime premium wages under the NYLL and Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and that Defendants failed to provide adequate wage statements as required under the NYLL § 195(3).

Through this motion, the parties respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement" or "Agreement") attached as Exhibit B to the Declaration of Brent E. Pelton in Support of the Motion for Preliminary Approval of Class Settlement ("Pelton Decl.")[1]; (2) approve the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Proposed Notice") and FLSA Collective Consent to Join Form ("Consent Form") attached as Exhibits C and D, respectively; and (4) schedule a Final Approval and Fairness Hearing before the Court.

---

[1] Unless otherwise indicated, all exhibits are attached to the Pelton Decl.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On April 7, 2022, the Named Plaintiffs commenced this Action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA by filing the Collective and Class Action Complaint (the "Complaint"). Defendants filed an Answer to the Complaint on May 4, 2022, disputing the material allegations. (Dkt. No. 9).  The Court held an initial conference before Magistrate Judge Sanket J. Bulsara on July 6, 2022, wherein the parties discussed a proposed discovery schedule and their desire to explore early settlement negotiations. (See Dkt. Entry Dated 07/06/2022). To that end, Magistrate Judge Bulsara entered the parties' proposed discovery schedule and scheduled a settlement conference for November 7, 2022. (*Id.*).

On November 2, 2022, the parties sought a 4-week adjournment of the settlement conference. (Dkt. No. 25). The Court granted the adjournment and rescheduled the settlement conference for December 15, 2022. (Dkt. Entry Dated 11/03/2022). Soon thereafter, the parties agreed to hold a private mediation and sought adjournment of the settlement conference (Dkt. No. 26), which was adjourned *sine die*. (Dkt. Entry Dated 11/11/2022). On February 13, 2023, the parties informed the Court that they had reached a settlement in principle. (Dkt. No. 29).

Pursuant to the parties' stipulation, on March 16, 2023, Plaintiffs filed an Amended Complaint, which included a new cause of action for unpaid "gap-time" wages, pursuant to the NYLL. (*See* Dkt. No. 32 at Count III). Defendants' deadline to respond to the Amended Complaint is April 14, 2023. (Dkt. Entry Dated 03/16/2023).

### II.    Overview of Investigation and Discovery

Before and during the formal litigation of this Action, Plaintiffs' Counsel has conducted thorough investigations into the merits of the potential claims and defenses. (Pelton Decl. ¶ 15).

2

Plaintiffs' Counsel focused investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled and Defendants' potential liability, as well as legal issues that have arisen during the course of the proceedings. (*Id.*). Plaintiffs' Counsel interviewed the Named Plaintiffs and the Opt-in Plaintiffs in order to determine the hours that they worked, the wages they were paid, and other information relevant to their claims. (*Id.*).

Following the initial conference on July 6, 2022, in preparation for the November settlement conference, the parties exchanged document discovery for the Named and Opt-In Plaintiffs, and Defendants provided wage and hour records relating to the putative class members, with their names redacted. (Pelton Decl. ¶ 16). During this period, a total of thirteen (13) individuals exercised their right to join the action by filing consent to become party plaintiff forms with the Court, pursuant to Section 216(b) of the FLSA. (*Id.*; Dkt. Nos. 10-16, 19, 20, 23, 24, 27, 28).

Throughout the Action, the Named Plaintiffs have assisted with the preparation of the complaint, assisted with the factual investigations of the claims, produced documents, attended the three (3) settlement and the mediation proceedings, and communicated with the Opt-in Plaintiffs and Class Members as needed throughout the pendency of the Action.  (Pelton Decl. ¶ 17).

## III.    Settlement Negotiations

Throughout the pendency of this Action, the parties have engaged in informal and formal settlement negotiations. (Pelton Decl. ¶ 18). Although they had initially agreed to attempt settlement with the Court's assistance, the parties agreed to attend a private mediation session to see if a resolution was possible prior to the settlement conference. (*Id.*).

Following Plaintiffs' completion of their analysis of the class-wide records, on or about November 23, 2022, Plaintiffs exchanged with Defendants their damages computation and initial

settlement demand. (Pelton Decl. ¶ 21). On December 7, 2022, the parties attended a full-day mediation before Stephen Sonnenberg, Esq. of JAMS, during which they reached a settlement in principle. (*Id.* ¶ 25). Over the next several weeks, the parties continued to negotiate the non-monetary terms of their agreement, which were memorialized in a Memorandum of Understanding ("MOU"), which was signed by the parties. (*Id.*; Ex. A). Thereafter, pursuant to the MOU, the parties drafted a formal settlement agreement and sought proposals from several settlement administrators. (Pelton Decl. ¶ 26). After additional negotiations concerning the administration of the settlement, the parties finalized the complete terms of their agreement in the Settlement Agreement, which is attached to the Pelton Decl. as Exhibit B. (*Id.*).

As is evident by the settlement negotiations and involvement of a mediator in the settlement discussions, at all times during the settlement negotiation process, settlement negotiations were conducted on an arm's-length basis. (Pelton Decl. ¶ 27).

## SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Amount

The Defendants have agreed to pay a total gross Settlement Amount of six hundred and fifty thousand dollars ($650,000.00) (the "Total Settlement Amount") to settle this action. (Ex. B ¶ 2.27; Pelton Decl. ¶ 30). After attorneys' fees and costs, fees for settlement administration, employer portion of payroll taxes and service awards for the Named Plaintiffs, the remaining funds (the "Net Settlement Amount") will be allocated among the Class and FLSA Collective members[2]. (Ex. B ¶¶ 2.29, 4.1; Pelton Decl. ¶ 30). All Class Members who do not timely opt-out of the Settlement (the "Claimants") will be eligible to receive a payment from the settlement. (Ex. B ¶¶

---

[2] Defendants will not be responsible for paying any amounts allocated to individuals who opt-out of the Settlement Class or fail to opt-in to the Settlement Collective, provided that in no event shall the amount deducted from the Total Settlement Amount exceed 20% of the Net Settlement Amount. (Ex. A ¶ 2.28 (the "Funded Settlement Amount")).

2.3, 4.1; Pelton Decl. ¶ 31). In addition, all FLSA Collective Members who submit a Consent to Join Form and/or who already opted into the litigation (the "Opt-in Claimants") will be eligible to receive a payment from the settlement. (Ex. B ¶¶ 2.21, 4.1; Pelton Decl. ¶ 31).

The parties have agreed to engage CPT Group ("CPT" or the "Settlement Administrator") to administer the Settlement by, *inter alia*, disseminating all Notices and Consent to Join Forms to Class and FLSA Collective Members, receiving all Consent to Join Forms from FLSA Collective Members, receiving any Opt-out statements or objections from Class Members, receiving Defendants' payment of the Funded Settlement Amount, calculating the amount of each Claimant and Opt-in Claimant's Settlement Checks, mailing settlement payments to each Claimant and Opt-in Claimant, tax withholdings and payments, and communicating as necessary with the parties and each Claimants and Opt-in Claimants to facilitate the Settlement. (Ex. B ¶ 3.3; Pelton Decl. ¶ 34).

## II.  Releases

The Settlement Agreement provides that Class Members will have sixty (60) days from the Settlement Administrator's mailing of the Notice of Proposed Settlement to opt-out of the Settlement. (Ex. B ¶ 3.7). All Class Members who do not timely opt-out of the Action will be deemed to release state wage claims consisting of all claims arising under the NYLL and New York state laws relating to wage and hour damages during the Class Period. (Ex. B ¶¶ 2.22, 2.26, 3.7(C), 5.1, 5.3; Pelton Decl. ¶ 38). In addition, all Opt-in Claimants will release their FLSA Claims during the FLSA Collective Period. (Ex. B ¶¶ 2.16, 2.22, 3.9(C), 5.2, 5.3; Pelton Decl. ¶ 38). Finally, in exchange for them receiving service awards, the Named Plaintiffs shall provide a general release of all claims against Defendants. (Ex. B ¶ 4.2; Pelton Decl. ¶ 38).

## III.  Notice

Within twenty (20) days of the Court granting preliminary approval of the proposed Settlement Agreement, the Settlement Administrator will mail the Notice of Proposed Settlement to all Class Members, with a Consent to Join Form included to all FLSA Collective Members. (Ex. B ¶ 2.19, 3.4, 3.6; Pelton Decl. ¶ 36). The Notice shall notify Class Members of information including the procedures and deadlines for objecting and opting-out of the settlement, the procedures and deadlines for FLSA Collective Members to return a Consent to Join Form in order to participate in the Collective action portion of the settlement, the date of the Final Approval and Fairness Hearing, the Settlement Amount, and the manner in which the Net Settlement Fund shall be allocated. (*Infra* § Argument IV; Pelton Decl. ¶ 37, Ex. C).

## IV.   Eligible Employees

All persons formerly employed by Defendants as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport at any time between August 23, 2015 and December 31, 2021 (the "Class" or "Class Members") who do not timely opt-out of the Settlement ("Claimants") will be eligible to receive a payment from the settlement. (Ex. B ¶¶ 2.3, 2.4; Pelton Decl. ¶ 31). In addition, all persons formerly employed by Defendants as Operation Assistants, Tour Supervisors, or Construction Leads at LaGuardia International Airport at any time between April 7, 2019 and December 31, 2021 (the "FLSA Collective" or "FLSA Collective Members") (Ex. B ¶¶ 2.17, 2.21; Pelton Decl. ¶ 31), who submit a Consent to Join Form and/or who already opted into the litigation (i.e., the Opt-in Plaintiffs) will be eligible to receive an additional allocation from the settlement for the time period that they worked during the FLSA Collective period. (Ex. B ¶ 4.3; Pelton Decl. ¶ 31).

## V.   Settlement Allocation

In accordance with the parties' MOU, Plaintiffs' Counsel created a formula to allocate the Net Settlement Amount among Class and FLSA Collective Members. (Ex. A ¶ 8). Specifically, the formula provides for an allocation of the settlement funds based on the number of workweeks in which the Class and FLSA Collective Members worked for Defendants. (Ex. B ¶ 4.3). Utilizing the workweeks of each Class and FLSA Collective Member tracks the actual damages that Plaintiffs' Counsel calculated for the Class because the alleged unpaid wages were incurred for each shift worked and were consistent throughout the Class Period. (Pelton Decl. ¶ 32). FLSA Collective Members receive a 25% enhancement for each workweek during the FLSA Collective Period to compensate them for their affirmative participation in the Action and their additional release of their FLSA Claims. (*Id.*, Ex. B ¶ 4.3(B)).  Any amounts allocated to a Class Member who opts out of the settlement or to an FLSA Collective Member who does not join the FLSA Collective, will remain with Defendants. (Ex. B ¶ 2.28).

## VI.    Fees and Costs

Consistent with the Settlement Agreement, Plaintiffs' Counsel will apply for reimbursement from the Settlement Fund for their actual litigation costs of up to $10,000, plus one-third (1/3) of the Settlement Fund after the deduction of actual litigation costs. (Ex. B ¶ 4.5; Pelton Decl. ¶ 39). Plaintiffs' Counsel has not entered into side agreements or other agreements regarding attorneys' fees and costs aside from the terms set forth in the Settlement Agreement. (*Id.*). The Court need not rule on fees and costs now. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a motion for approval of attorneys' fees, service awards, and reimbursement of expenses along with Plaintiffs' Motion for Final Approval of the Settlement.

## VI.    Settlement Administration Costs

7

As set forth above, the parties both obtained proposals from potential settlement administrators in order to choose the most cost-effective company to administer the settlement. (Pelton Decl. ¶ 35).  The Settlement Administrator's reasonable costs are to be paid from the Net Settlement Amount. (Ex. B ¶ 2.29; Pelton Decl. ¶ 35). The Court need not rule on the proposed settlement administration fees now. Plaintiffs will move for Court approval of the settlement administration fees simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

## VII.    Service Awards

In addition to their individualized awards under the allocation formula, the Named Plaintiffs will apply for modest enhancement payments ("Enhancement Awards") in recognition of the services they rendered on behalf of the class and in exchange for a general release of their claims against Defendants. (Ex. B ¶ 4.2; Pelton Decl. ¶ 33).  The two (2) Named Plaintiffs will apply to receive two thousand five hundred dollars ($2,500.00) to each Named Plaintiff for a total of five thousand dollars ($5,000.00) as Enhancement Awards from the Settlement Amount. (*Id.*). The Court need not rule on the proposed Enhancement Award now. Plaintiffs will move for Court approval of the Enhancement Award simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

## CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed notice of settlement and claim forms to all affected Class Members; and

3.    A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e)(1),(2); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, the Named Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving Plaintiffs' proposed Notice materials, and authorizing Plaintiffs to send Notice to the Class.

## ARGUMENT

### I.      Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

#### A.      Rule 23 Standards for Evaluating Class Settlements

Rule 23(e)(1), amended in 2018, essentially approves the preliminary approval practice that has become standard in this Circuit, providing that the district court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class, if not already certified. *See* F.R.C.P. 23(e)(1); Notes of Advisory Committee on 2018 Amendments. Rule 23(e) also makes clear that these requirements,

including notice requirements, apply in cases where a class has already been certified as well as cases where the parties have proposed certifying a class for settlement purposes. *Id.*

Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members. To make this determination, courts should examine a list of core concerns" set forth by the Rule, specifically whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The Rule also requires the parties to identify all agreements made in connection with the proposed settlement and include an opportunity for class members to opt-out if the class was previously certified. Finally, the Rule provides a detailed procedure for Class Member objections and for seeking approval after an appeal.

Fairness is evaluated both by "the negotiating process leading up to the settlement as well as the settlement's terms." *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted). If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court is able to evaluate the settlement with the benefit of the class members' input.

**B.    The Settlement is Fair, Reasonable, and Adequate**

**1.    The Named Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class**

As set forth *infra* at Argument Section II(D), the Named Plaintiffs have more than adequately represented the Class. The Named Plaintiffs have no conflicts with the Class Members, no interests antagonistic to those of the Class, and have actively participated in the Action on behalf of their own claims and the claims of Class Members.

Likewise, as set forth *infra* at Argument Section IV, Class Counsel have extensive experience in litigating and settling wage and hour class actions and have already expended substantial time, work and resources into prosecuting this matter. As a result, Class Counsel has reached a fair settlement on behalf of Class Members.

**2.    The Settlement Was Negotiated at Arm's Length**

The parties have exchanged relevant class-wide discovery to sufficiently evaluate the claims and defenses, and have at all times engaged in settlement negotiations at arm's length. (Pelton Decl. ¶ 27). As such, the settlement negotiation procedure has been fair to Plaintiffs and Class Members.

**3.    The Relief for Class Members is Adequate and Fair**

Rule 23(e) provides that determination of the adequacy and fairness of Class Members' relief take into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's

11

fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)

F.R.C.P. 23(e)(2).

The Defendants have agreed to settle this case for a substantial amount, six hundred and fifty thousand dollars ($650,000.00). The settlement is based upon alleged damages to all Class Members and was negotiated taking the full class into consideration. The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs and the Class and Collective Members succeeded on all claims at trial and survived an appeal. In addition, since the Settlement Agreement provides for a significant payment to be made by Defendants within a relatively short timeline after Final Approval, the settlement would likely yield recovery for Plaintiffs and Class and Collective Members much sooner than would be required for completion of litigation through formal discovery, motion practice and, if needed, a long trial.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, Plaintiffs' Counsel prepared a damages analyses using time and pay records provided by Defendants, as well as information gathered from the Named and Opt-in Plaintiffs. (Pelton Decl. ¶ 19). In this way, Plaintiffs calculated unpaid regular wages, unpaid overtime, and statutory wage statement damages. (*Id.*). Plaintiffs' class-wide damages analysis calculated a total of $162,807.09 in unpaid regular "gap-

time" wage damages and $470,606.64 in overtime damages, for an unpaid wage total of $634,230.49, plus $273,642.86 in wage statement damages. In total, with liquidated damages and prejudgment interest, Plaintiffs calculated total class-wide damages of $1,780,010.30. (*Id.* at ¶ 22).

Plaintiffs' damages analysis relied upon assumptions as to the amount of off-the-clock time that they spent either pre- or post-shift or on account of unpaid meal breaks, which assumptions Defendants strongly contest. (Pelton Decl. ¶ 20). In particular, Defendants contest that Plaintiffs performed any work "off-the-clock" before or after their scheduled shifts. Specifically, Defendants assert that they had policies in place to ensure that Plaintiffs were compensated for all time worked and were provided coverage in order to take required breaks, such that they did not have to work through breaks. (*Id.*). Defendants further assert that any such time that was allegedly worked and not paid would have been based on an individualized situation that was counter to Defendants' policies, such that collective and/or class treatment is inappropriate. (*Id.*). Consequently, Defendants would strongly contest any motions by Plaintiffs for collective and class action status and would likely seek decertification of any collective and/or class prior to trial.  Accordingly, while Plaintiffs believe that the figures used in the damages analysis are correct, Plaintiffs recognize the risks of establishing these facts at trial, especially on a class-wide basis. As such, Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class and Collective Members in the face of risks and uncertainty.

As described above, the Settlement Amount will be allocated to Class and Collective Members using a formula that takes into account the total number of weeks they worked. (Ex. B ¶ 4.3; Pelton Decl. ¶ 32). As such, the allocation set forth in the Settlement Agreement directly links each Participating Class Members' recovery with the claims asserted in this Action.  These terms

and provisions of the settlement shall be presented to the Court for examination of their fairness

and to Class and Collective Members via the proposed Notice, such that Class Members will have

the opportunity to review, object and/or opt-out.

### 4.    Class Members Have an Opportunity to Opt-Out

The Settlement Agreement and the Notice both clearly set forth the form and procedures

to follow should Class Members prefer to opt-out of the Class and the settlement.  As such, Class

Members will have the opportunity to pursue separate litigation against Defendants.

### C.    The Settlement Satisfies the *Grinnell* Factors

Prior to the 2018 amendments to Rule 23, courts in the Second Circuit generally

considered, and frequently continue to consider, the nine factors set forth in *City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

495 F.2d at 463.  Many of these factors evaluate similar facts as the Rule 23(e) and are still relevant

to evaluating the fairness of proposed class settlements. *See* Advisory Committee Notes (Rule

23(e)(2) factors not designed to displace any factor); *Christina Asia Co. v. Jack Yun Ma*, No. 15-

md-2631, 2019 U.S. Dist. LEXIS 179836, at *37 (S.D.N.Y. Oct. 16, 2019) ("The factors set forth

in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors"). All of

the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor

of preliminary approval.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long

(<u><em>Grinnell</em> Factor 1</u>)

While the parties have already engaged in extensive discovery, by reaching a favorable settlement at this time, the parties seek to avoid the significant expense and delay of deposition discovery, motions for collective and class action certification, dispositive motions and trial practice, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian*, 80 F. Supp. 2d at 174. This case is no exception. Continued litigation would require significant expenditure of resources of the parties, Plaintiffs, Class and Collective Members and the Court and would seriously delay monetary recovery, if any, of Plaintiffs and Class and Collective Members. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.

2.    **The Reaction of the Class Has Been Positive**
      (<u><em>Grinnell</em> Factor 2</u>)

Although notice of the settlement and its details has not yet issued to the class, the Named Plaintiffs support the settlement. Although the Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object, it does not weigh against preliminary approval.

3.    **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (<em>Grinnell</em> Factor 3)**

Throughout the litigation of the Actions, the parties exchanged a significant amount of discovery to appreciate the merits, strengths and weakness of the claims and defenses in this Action. There is no threshold discovery must reach in order to satisfy this inquiry; the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The parties'

15

discovery here meets this standard.  Plaintiffs' Counsel conducted substantial investigation and prosecution of the claims in the lawsuit, including, but not limited to, discussions with the Named and Opt-in Plaintiffs; reviewing document discovery produced by Defendants including thousands of pages of payroll records, employment data, hours worked and personnel materials; and engaging in substantial informal and formal settlement negotiations including a private mediation, which succeeded in reaching a settlement in principle. (Pelton Decl. ¶¶ 15-27).

### 4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' Counsel believes this case is strong, it is subject to considerable risk as to liability, class issues, and damages as set forth *supra* at Argument Section I(B)(3). In weighing the risks, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). Further litigation culminating in a trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability and class treatment under the FLSA and NYLL and in light of the defenses available to the Defendants, which would pose substantial risk as to both liability and damages. This factor weighs heavily in favor of preliminary approval.

### 5.     Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of establishing and maintaining collective and class certification through trial is also present.  As set forth *supra* at Argument Section I(B)(3), Plaintiffs would likely face highly contested collective and class motion practice and likely decertification prior to trial. Risk, expense, and delay are involved in each of these steps in the litigation.  Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

**6.      Defendants' Ability to Withstand a Greater Judgment (_Grinnell_ Factor 7)**

Defendants' financial condition was not a significant factor in the settlement negotiations. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." _Frank,_ 228 F.R.D. at 186 (quoting _In re Austrian_, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this Court from granting preliminary approval.

**7.      The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (_Grinnell_ Factors 8 and 9)**

As described _supra_ at Argument Section I(B)(3), Plaintiffs' Counsel has determined that this case presents significant risks that militate toward substantial compromise.  The allocation formula is closely tied to the merits and relative strengths and weaknesses of Class and Collective Members' claims, depending upon the total duration and the dates of their employment. (_Id._).

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.  Accordingly, all of the _Grinnell_ factors weigh in favor of issuing preliminary approval of the settlement.  In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" _Frank_, 228 F.R.D. at 184 (quoting _Joel A_, 218 F.3d at 138-39), the Court should grant its preliminary approval.

## II.      Conditional Certification of the Class Is Appropriate

For settlement purposes, Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23.  The Court should make a determination that the proposed settlement class satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation,

and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 620 (1997); Newberg § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod.*

*Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, and appoint

Plaintiffs' counsel as Class Counsel and the Named Plaintiffs as class representatives.

As discussed below, all of the certification requirements for settlement purposes are met

for this proposed settlement class. While Defendants dispute that the claims alleged in the action

are proper for certification under Rule 23 on behalf of the purported class, they have agreed, for

the purposes of settlement only, not to contest class certification of the following class: all persons

formerly employed by Defendants as Operation Assistants, Tour Supervisors, and/or Construction

Leads at LaGuardia International Airport at any time between August 23, 2015 and December 31,

2021. (Ex. B ¶ 2.4).

Provisional settlement class certification and appointment of class counsel have several

practical purposes, including avoiding the costs of litigating class status while facilitating a global

settlement, ensuring notification of all class members of the terms of the proposed Agreement, and

setting the date and time of the final approval hearing. *See In re GMC*, 55 F.3d at 78.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1)    the class is so numerous that joinder of all members is
>        impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are
>        typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect
>        the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

18

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.    Numerosity

The proposed class satisfies the numerosity requirement because there are more than 40 class members in the Class. (*See* Pelton Decl. ¶ 28). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B.    Commonality

Plaintiffs allege that the proposed class satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Auth. Police Benev. Ass'n, Inc., v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involved numerous common issues. Primarily, the Class Members bring similar claims: that they regularly performed work for which they were not compensated and that Defendants failed to provide wage statements which included all hours worked, as required by the NYLL. *See Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, *8 (S.D.N.Y. Jan. 29, 2014). In

the absence of class certification and settlement, each individual class member would be forced to litigate each common issue of fact and law.

### C.   Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class and subclass. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc*., 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quotation omitted).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. The Named Plaintiffs claim the same injuries as the Class Members – that they were not paid wage for all hours worked and overtime premiums as required by the FLSA and NYLL, and that they did not receive accurate wage statements. *See, e.g., Flores*, 2014 U.S. Dist. LEXIS 11026 at *8; *Frank*, 228 F.R.D. at 182 (finding that class satisfied the typicality requirement where all members allege that defendant failed to pay overtime wages).

### D.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking*

*Sys.*, No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056, at \*\*18-19 (S.D.N.Y. Sep. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. Jun. 23, 1998).

Regarding the adequacy of the Named Plaintiffs, there is no evidence or indicia that they have interests that are in any way antagonistic or at odds with the Class Members. Likewise, as set forth *infra* at § II(F), Plaintiffs' Counsel, Pelton Graham LLC, are experienced in wage and hour class action litigation and satisfy the adequacy requirement of Fed. R. Civ. P. 23(a)(4).

### E.   Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Named Plaintiffs and the proposed class easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"). Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001).

### 1.  Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp*., 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d at 138). The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183.

Here, all members of the Class are unified by common factual allegations – that all class members allege they were not paid in accordance with the FLSA and NYLL, and that they were not provided wage statements in the form prescribed by the NYLL. *See Flores*, 2014 U.S. Dist. LEXIS 11026 at *9 (finding that "Plaintiffs' common factual allegations and a common legal theory — that Defendants violated state wage and hour laws by failing to provide proper statutorily-required notices — predominate over any factual or legal variations among class members.").

## 2. A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether

"the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, the Named Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by the Class Members arising from the same allegations for workers in their positions. Regarding the forum, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within the jurisdiction of this Court. Whether the case would be manageable as a class action at trial is not of consequence here in the context of a proposed settlement. *Frank,* 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

### F.    Plaintiffs' Counsel Should Be Appointed As Class Counsel

In evaluating the adequacy of class counsel, Rule 23(g) requires the Court to consider: (1) the work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to represent the class. Fed. R. Civ. P. 23(g). Here, Plaintiffs' Counsel has extensive experience litigating and settling wage and hour cases and other employment cases, and thus are well-versed in the applicable law. (Pelton Decl.

¶¶ 5-6). Moreover, Plaintiffs' Counsel has expended significant time identifying, investigating, and pursuing discovery of relevant information and settlement in this case in an effort to identify and properly prosecute the claims on behalf of the affected individuals. (*Id.* at ¶ 8). For these reasons, Plaintiffs' Counsel should be appointed as Class Counsel.

## III.    Conditional Certification of FLSA Collective Is Appropriate

The Second Circuit has endorsed a two-step method to certify FLSA collective actions. *See Myers v. Hertz Corp*., 624 F.3d 537, 542 (2d Cir. 2010) (noting "[u]nlike in traditional 'class actions' . . . plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by the judgment"). At the first step, courts consider whether "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 655.

Here, for settlement purposes only, the parties have agreed to conditional certification of an FLSA Collective in order to permit Class Members with live FLSA claims to opt-in to the Action and assert their FLSA claims. (*See* Ex. B ¶ 3.9). The proposed collective is defined as: All persons formerly employed as Operation Assistants, Tour Supervisors, or Construction Leads at LaGuardia Airport by Defendants at any time between April 7, 2019 and December 31, 2021. (Ex. B ¶ 2.17).  The standards for certifying a collective action under the FLSA are not as stringent as they are for a Rule 23 class because "an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Kochilas v. National Merchant Servs., Inc.*, No. 14 CV 0311, 2015 U.S. Dist. LEXIS 135553, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). Therefore, courts have held that satisfaction of the *Grinnell* factors will satisfy the standards for approval of an FLSA settlement. *Sierra v. Spring Scaffolding LLC*, No. 12 CV 05160, 2015 U.S. Dist. LEXIS 178006, 2015 WL 10912856, at *4 (E.D.N.Y. Sept. 30, 2015). As set forth supra §

24

I(C), the proposed settlement satisfies the Grinnell factors and should therefore satisfy the standards for approval of the FLSA settlement.

## IV.     The Proposed Notice Is Appropriate

The content of the Notice of Proposed Class and Collective Settlement (the "Notice") fully complies with the requirements under Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice, which will be distributed via United States mail and e-mail, here satisfies each of these requirements. F.R.C.P. 23(c)(2); Notes of Advisory Committee on 2018 Amendments. The best practicable method of notice should be considered in light of current technology and class members' likely access to such technology. *Id.*  Here, the Notice describes the terms of the settlement, informs the class and collective about their rights regarding the settlement, their ability to opt-out, the collective member's ability to opt-in, the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. (Ex. C). Accordingly, the detailed information in the Notice to Class Members is more than adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B). The Proposed Settlement Notice to Class Members fully complies with the requirements of Rule 23(c)(2)(B).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Class Settlement and enter the Proposed Order.

Dated:  New York, New York
        March 21, 2023

**PELTON GRAHAM LLC**


By: ___*/s/Brent E. Pelton*_____
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
111 Broadway, Suite 1503
New York, NY 10006
(212) 385-9700

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and the Class*