UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUIS LOPEZ and BOBBY MORRISON,
*individually and on behalf of all others similarly situated*,

                  Plaintiffs,

                  22-CV-1990-SJB

    - against -

UNIVERSAL PROTECTION SERVICE, LLC d/b/a
ALLIED UNIVERSAL SECURITY SERVICES and
ALLIEDBARTON SECURITY SERVICES LLC,
*jointly and severally*,

                  Defendants.
------------------------------------------------------------x

**BULSARA, United States Magistrate Judge:**

<u>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**</u>

The above-captioned matter came before the Court on the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement ("Motion for Preliminary Approval").

**I.    Procedural History and Standard for Approval**

    1.    The parties' proposed settlement resolves all claims in the above-captioned action (the "Action").

    2.    Named Plaintiffs Luis Lopez and Bobby Morrison (the "Named Plaintiffs") allege that Defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services and AlliedBarton Security Services LLC (collectively, the "Defendants" or "Allied") failed to pay their Operation Assistants, Tour Supervisors, and Construction Leads at LaGuardia International Airport ("LGA") for all time that they worked each day, resulting in unpaid regular "gap-time" wages in violation of the New York Labor Law

("NYLL") and unpaid overtime premiums for hours worked over forty (40) in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA") and NYLL. (*See generally* Class & Collective Action Compl. dated Apr. 7, 2022, Dkt. No. 1). Plaintiffs further allege that Defendants failed to provide accurate wage statements reflecting all of their hours worked each pay period, in violation of the NYLL. (*Id.*).

3.      The Court held a hearing regarding preliminary approval of the proposed settlement on May 4, 2023, wherein the Court discussed with counsel for the parties certain revisions that were needed to the parties' Settlement Agreement and Release (the "Settlement Agreement") which was attached to the Pelton Declaration as Exhibit B, filed with the Court on March 21, 2023. (Dkt. No. 34-2).

4.      The parties made certain revisions to the Settlement Agreement, which was re-executed and re-submitted to the Court on May 18, 2023, reflecting the edits discussed with the Court at the May 4, 2023 hearing (the "Revised Settlement Agreement"). (Revised Settlement Agreement, Dkt. No. 39-1).

5.      The Court preliminarily approves the Revised Settlement Agreement.

6.      Preliminary approval is the first step in the settlement process. It allows for dissemination of notice to class and collective action members and provides them an opportunity to respond by participating in the settlement, objecting to it, or opting out of it. After the notice period, the Court will conduct a final fairness hearing to determine whether final approval should be granted and judgment entered. The Revised Settlement Agreement contemplates two procedural vehicles operating simultaneously: (a) a class action settlement, pursuant to Federal Rule of Civil Procedure 23, resolving NYLL claims; and (b) a collective action settlement to resolve FLSA claims.

7.      To participate in a FLSA collective action, employees who are not named

2

plaintiffs must affirmatively consent or "opt-in" to litigation of their claims. Employees who choose not to opt-in retain their rights to bring their own FLSA claim. In contrast, Rule 23 class actions brought under the NYLL do not require the affirmative consent of class members. Rather, all class members are included as parties unless they affirmatively "opt-out." Any class member who does not opt out will be bound by the subsequent judgment. Thus, an employee can remain in the class, but does not automatically join in the FLSA settlement unless he or she affirmatively opts into the collective action. To satisfy the procedural requirements of Rule 23 and fit within the collective action procedures of Section 216(b) of FLSA, a hybrid settlement agreement, like the parties have proffered in this case, must permit employees an option to opt into the FLSA collective, and simultaneously give them an avenue to opt-out of the NYLL class.

8.   The putative class action members are all persons formerly employed as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between August 23, 2015 and December 31, 2021. (Revised Settlement Agreement ¶ 2.4).

9.   To grant preliminary approval of a settlement for this class, "the most significant factor for the district judge is the strength of plaintiffs' case balanced against the settlement offer. Although the district judge in striking this balance should not convert the settlement hearings into a trial on the merits, he is required to explore the facts sufficiently to make an intelligent comparison between the amount of the compromise and the probable recovery." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 633 (2d Cir. 1980) (citation omitted). "[T]he granting of [preliminary approval] is not tantamount to a finding that the settlement is fair and reasonable. It is at most a

3

determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Id*. at 634. "At the preliminary approval stage of the case, 'the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion.'" *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 82 (E.D.N.Y. 2019) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)), *reconsideration denied*, 381 F. Supp. 3d 239 (2019); *see* Fed. R. Civ. P. 23(e)(2).

10. The putative collective action members of the proposed FLSA collective, 29 U.S.C. § 216(b), are all persons formerly employed as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between April 7, 2019 and December 31, 2021 (the "FLSA Collective" or "FLSA Collective Members"). (Revised Settlement Agreement ¶ 2.17).

11. To obtain preliminary approval of a settlement for this collective, the parties must demonstrate that the settlement is consistent with *Cheeks v. Freeport Pancake Hours, Inc.*, 796 F.3d 199 (2d Cir. 2015). Under *Cheeks*, parties cannot privately settle FLSA claims with prejudice absent the approval of the district court and "must satisfy the Court that their agreement is fair and reasonable." *Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016) (quotations omitted) (citing *Cheeks*, 796 F.3d at 200). Even for preliminary approval of a collective-wide FLSA settlement, the Court must undertake some *Cheeks* review. After notice is distributed, the Court conducts a further and final *Cheeks* review.

## II. The Settlement Agreement

12. The Court has reviewed the submissions made by Plaintiffs' counsel in connection with the proposed settlement, which include a memorandum of law and

declaration. (Dkt. Nos. 33–35, 39). Specifically, Plaintiffs' counsel has provided detailed information regarding the discovery completed to date, the formal and informal negotiations that led to the finalized settlement, terms of the Revised Settlement Agreement, and the mechanisms for Class and FLSA Collective Members to participate in the settlement, to exclude themselves from the settlement, or to object to the terms of the settlement. (*See generally* Decl. of Brent E. Pelton ("Pelton Decl."), Dkt. No. 34).

13.  In addition, counsel has provided a proposed Notice of Proposed Class Settlement which likewise provides Class and FLSA Collective Members with detailed information regarding the settlement procedure, the estimated allocation from the settlement, and the manner by which they can choose to participate or exclude themselves from the settlement. (*See* Revised Notice, Dkt. No. 39-2).[1]

14.  The parties have agreed to settle for a "Total Settlement Amount" of up to Six Hundred and Fifty Thousand Dollars ($650,000.00). (Revised Settlement Agreement ¶ 2.29). After attorneys' fees and expenses, fees for settlement administration, the employer's portion of payroll taxes and enhancement awards for the Named Plaintiffs, the remaining funds (the "Net Settlement Amount") will be allocated among the Class and FLSA Collective Members. (*Id.* ¶ 2.31).

15.  Should an employee participate in the class action or collective action, they shall receive a "Settlement Check" from the Net Settlement Amount. (*Id.* ¶ 2.27).

16.  The Revised Settlement Agreement also includes a reversionary provision, which provides for two types of reversion: (1) up to twenty percent (20%) of the Settlement Amount allocated to Class Members who opt-out of the settlement or FLSA

---

[1] The initial draft of the Notice, which was submitted to the Court in connection with the Motion for Preliminary Approval, (Dkt. No. 34-3), was revised in accordance with the Court's direction at the May 4, 2023 conference and submitted to the Court via ECF on May 18, 2023. (Dkt. No. 39-2).

5

Collective Members who fail to opt-in to the settlement; and (2) any unclaimed amounts remaining in the Settlement Fund six (6) months after the initial mailing of the Settlement Checks. (*Id.* ¶¶ 2.30, 4.6).

### III. Certification of Settlement Class and Class Counsel Determination

17.    "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring a notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *See Dorn v. Eddington Sec.*, No. 08-CV-10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

18.    The Court certifies the following NYLL class pursuant to Rule 23(e), for settlement purposes ("Settlement Class"): All persons formerly employed as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between August 23, 2015 and December 31, 2021. (Revised Settlement Agreement ¶ 2.4).

19.    The Settlement Class meets all requirements for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3):

    a. There are over 60 potential class members; thus, joinder is impracticable. Fed. R. Civ. P. 23(a)(1).

    b. Class members share common issues of fact and law, including whether Defendants failed to pay them wages in violation of state wage and hour laws. Fed. R. Civ. P. 23(a)(2).

6

    c. Named Plaintiffs' claims for unpaid regular "gap-time" wages and unpaid overtime pay are typical of the claims of the Class Members. Fed. R. Civ. P. 23(a)(3).

    d. There is nothing to suggest that the Named Plaintiffs will not fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

20. Plaintiffs also satisfy Rule 23(b)(3). Common factual allegations and common legal theory predominate over any issues affecting only individual employees. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.

21. The Court appoints Brent E. Pelton, Esq. and Taylor B. Graham, Esq. of Pelton Graham LLC as Class Counsel; they meet all of the requirements of Fed. R. Civ. P. 23(g). Pelton Graham LLC did substantial work identifying, investigating, and prosecuting the claims and negotiating the proposed settlement. Pelton Graham LLC has previously been certified as Class Counsel in numerous wage and hour litigation. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (explaining that Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class." (quotations omitted)).

## IV. Approval of Class and Collective Action Settlements

22. The Court has conducted a fairness review of the class action settlement under the factors articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974), and a preliminary evaluation of the fairness of the FLSA settlement under the standards in *Cheeks*.

23. The Court is satisfied that to the extent necessary for preliminary approval that both the class and collective action settlements are fair and reasonable. Among other reasons, this is a complex case with over 60 class and potential collective action members, where the Plaintiffs have a fair amount of litigation risk, because (1) Plaintiffs may not be able to establish liability and damages at trial due to various defenses available to Defendants, (2) Plaintiffs may not be able to certify and maintain the class and/or collective action through trial, and (3) litigation might not result in recovery, might result in recovery that is less favorable than this settlement, and/or might result in a recovery that might not be obtained for several years. (Mem. of Law in Supp. of Mot. for Prelim. Approval, Dkt. No. 35 at 12–13).

24. The parties have engaged in sufficient class-wide and collective discovery to vet their claims and defenses, and therefore have sufficient information to evaluate the risks of non-settlement and the advantages of settling in accordance with the proposed terms. (*Id.* at 15–16). Finally, assuming the best possible recovery, the claims of all class and collective members would amount to $1,780,010.30. (*Id.* at 13). Of that amount, counsel has indicated that the alleged damages for unpaid wages, including regular and overtime premiums, amounts to $634,230.49. (*Id.*). Even subtracting attorneys' fees of 1/3, costs of approximately $10,000, service awards totaling $5,000, and administration costs of approximately $10,000, the net settlement amount is approximately 65% of the value of the class and collective's total unpaid wage claims. (Pelton Decl. ¶ 24). Such a recovery is above the percentage recovery that courts in the Second Circuit have found to be sufficiently fair and reasonable. *See Siddiky v.*

*Union Square Hosp. Grp., LLC*, No. 15-CV-9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13 to 25%); *Pauta v. AJC Jewelry Contracting Corp.*, No. 18-CV-6001, 2019 U.S. Dist. LEXIS 62788, at *1–*2 (S.D.N.Y. Apr. 10, 2019) (finding 46% recovery well within range of reasonable recovery) (citing *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (finding recovery of 43% of the anticipated maximum recovery was fair and reasonable)).

25. The Court has reviewed the Revised Settlement Agreement and does not find any term that on its face suggests that the agreement was the product of improper collusion or otherwise contains provisions that are unfair to the class or collective action members.

26. The Court approves the revised proposed Notice of Class and Collective Action Settlement ("Proposed Notice"), which counsel has filed at Docket Number 39-2, and directs its distribution to the class and collective members.

27. A notice must provide "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

28. The Proposed Notice satisfies each of these requirements and adequately gives class and collective action members notice of the proposed settlement. The Proposed Notice describes the terms of the settlement, informs the class and collective about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. It also informs employees of their right to exclude themselves from the class and bring their own lawsuit against Defendants. The Proposed Notice also makes clear that class and collective members have the right to object to the terms of the settlement and explains how they may have their concerns heard at the Court's final fairness hearing. Finally, the Proposed Notice informs putative collective members that to become part of the FLSA Collective, if they have not already joined the Action, they must affirmatively submit the Consent to Join Form, which counsel has included with the motion at Docket Number 34-4.

29. The Court adopts the following timeline to govern the settlement process in this case:

| Preliminary Approval Granted | May 30, 2023 |
|---|---|
| Defendants to Provide Settlement Administrator Class List | 10 days after Preliminary Approval Granted |
| Notice Mailing and Emailing Deadline | 20 days after Preliminary Approval Granted |
| Opt-Out/Opt-In Period (last day to submit Opt-Out Statement or an Objection and last day to submit a Consent to Join Form) | 60 days after Notice mailing (if Notice returned and re-mailed, not later than 90 days after initial Notice mailing) |
| Settlement Administrator to Send Copies of All Opt-Out Statements, Objections and Consent to Join Forms that it receives to Counsel | Within 5 days of receipt of such copies by Settlement Administrator |
| Settlement Administrator will email a final report detailing the results of the mailing and participation | Within 10 days following Opt-Out/Opt-In Period |
| Final Approval Motion and Fee Motion Date | 15 days prior to Final Fairness Hearing Date |

| Final Approval/Fairness Hearing Date | September 27, 2023 |
|---|---|
| Funding of QSF required from Defendants | 30 days after Final Effective Date, as defined in Sec. 2.14 of the Revised Settlement Agreement |
| Settlement Administrator to mail Settlement Checks to Claimants, Opt-in Claimants, Class Counsel, Class Representatives' enhancement award | 45 days after Final Effective Date |
| Acceptance Period | 90 days after mailing of Settlement Checks |
| Reversion, if any, to be sent to Defendants | 6 months after mailing of Settlement Checks |

SO ORDERED.

/s/ *Sanket J. Bulsara*  May 30, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

11