## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS LOPEZ and BOBBY MORRISON, Individually and On Behalf of All Others Similarly Situated,**<br><br>       **Plaintiffs,**<br><br>-against-<br><br>**UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES and ALLIEDBARTON SECURITY SERVICES LLC, Jointly and Severally,**<br><br>       **Defendants.** | **Case No. 1:22-cv-1990 (SJB)** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE AND CLASS SETTLEMENT AND FOR APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

### PELTON GRAHAM LLC

Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the FLSA Collective and Settlement Class*

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... iv

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND. ................................................. 2

I.     The Court's Preliminary Approval Order, Notice and Claim Administration.................... 2

II.    Results of Notice ................................................................................................ 2

SETTLEMENT TERMS ............................................................................................. 4

ARGUMENT ............................................................................................................... 4

I.     Final Approval of the Settlement Is Appropriate ............................................... 4

II.    The Settlement is Fair, Reasonable, and Adequate ............................................ 7

       A.     Legal Standards for Evaluating Class Settlements........................... 7

       B.     The Settlement is Fair, Reasonable, and Adequate ......................... 8

              1.     The Named Plaintiffs and Class Counsel Have Adequately
                     Represented the Class........................................................... 8

              2.     The Settlement Was Negotiated at Arm's Length ...................... 9

              3.     The Relief for Class Members is Adequate and Fair ................. 9

              4.     Class Members Have an Opportunity to Opt-Out.................... 13

       B.     The *Grinnell* Factors Favor Final Approval.......................................... 13

              1.     Litigation Through Trial Would be Complex, Costly and Long
                     (*Grinnell* Factor 1) ................................................................ 13

              2.     The Reaction of the Class Has Been Positive
                     (*Grinnell* Factor 2) ................................................................ 14

              3.     Discovery Has Advanced Far Enough to Allow The Parties To
                     Resolve The Case Responsibly (*Grinnell* Factor 3)................. 15

              4.     Plaintiffs Would Face Real Risks If the Case Proceeded

**Page(s)**

(*Grinnell* Factors 4 and 5) ........................................................ 16

5.    Establishing A Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................ 16

6.    Defendants' Ability to Withstand A Greater Judgment Is Not At Issue (*Grinnell* Factor 7) ................................................................. 17

7.    The Settlement Amount Is Subtantial, Even In Light of the Best Possible
Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..................................................................................... 17

III.    Approval of FLSA Collective Settlement is Appropriate Pursuant to *Cheeks* .................. 18

IV.    Enhancement Awards Are Appropriate in this Case ......................................... 19

V.    Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount...………………………………………………………...…………..20

    A.    The Terms in the Named Plaintiff's Retainer, the Settlement Agreement and the Class Settlement Notice Entitle Class Counsel to One-Third (1/3) of the Settlement Amount ............................................................... 21

    B.    The Percentage of the Fund Method of Awarding Attorneys' Fees is Appropriate in Common Fund Cases ............................................... 22

    C.    An Award of One-Third (1/3) of the Settlement Amount as Attorneys' Fees is Reasonable ........................................................................ 23

        i. Class Counsel has expended significant time and effort on this case ............... 24

        ii. The large and complex nature of this litigation warrants the award of attorneys' fees being requested ................................................... 24

        iii. Class Counsel took on a large amount of risk in prosecuting this case .......... 24

        iv. Class Counsel's representation has been of the highest quality ................... 25

        v. The requested fees are reasonable in relation to the settlement ................... 25

        vi. Public policy weighs in favor of awarding attorneys' fees ........................ 26

    D.    The Lodestar "Cross Check" Further Supports an Award to Class Counsel of One-Third of the Settlement fund ................................................. 27

**Page(s)**

E.    Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs ...... 28

VI.    The Settlement Administrator's Fees Should Be Approved …………………….....…..29

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asare v. Change Group N.Y.*,
   No. 12-cv-3371, 2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. Nov. 15, 2013)...............23

*Blum v. Stenson*,
   465 U.S. 886, 900 n. 16 (1984). ...........................................................................22

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 478 (1980) .....................................................................................22

*Butt v. Megabus Northeast LLC*,
   No. 11-cv-3993 (JPO), 2012 U.S. Dist. LEXIS 137683, at *12-13 (S.D.N.Y. Sept. 12,
   2012)......................................................................................................................15

*Campos v. BKUK 3 Corp.*,
   No. 18-cv-4036, 2021 U.S. Dist. LEXIS 151528 (S.D.N.Y. Aug. 10, 2021) .........................21

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199, 206 (2d Cir. 2015) ...........................................................4, 18, 19

*Chen v. Xpressa at Terminal 4 JFK LLC*,
   No. 15-cv-1347, 2021 U.S. Dist. LEXIS 189942 (E.D.N.Y. Oct. 1, 2021) ...............14, 24, 26

*Christine Asia Co. v. Jack Yun Ma.*,
   No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019)................5, 8, 22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448, 463 (2d Cir. 1974)......................................................................*passim*

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ....................................................................................14

*De La Cruz v. Manhattan Parking Grp, LLC*,
   No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267 (S.D.N.Y. July 12, 2022) ................19, 29

*DeLeon v. Wells Fargo Bank, N.A.*,
   No. 12-cv-4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015)..............................26

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326, 338–39 (1980) ..............................................................................26

*Elliot v. Leatherstocking Corp.*,
   No. 10-cv-934, 2012 U.S. Dist. LEXIS 171443 (N.D.N.Y. Dec. 4, 2012)............5, 14, 16, 27

**Page(s)**

*Febus v. Guardian First Funding Grp., LLC,*
    870 F. Supp. 2d 337 (S.D.N.Y. 2012) ............................................................................ 24, 25

*Flores v. Mamma Lombardi's of Holbrook, Inc.,*
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ............................................................................ 29

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................ 17, 18

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43, 47 (2d Cir. 2000) ............................................................................ *passim*

*Guzman v. Joesons Auto Parts,*
    No. 11-cv-4543, 2013 U.S. Dist. LEXIS 68969 (E.D.N.Y. May 15, 2013) ......................... 25

*Grant v. Ocwen Loan Servicing, Inc.,*
    No. 15-cv-1376, 2019 U.S. Dist. LEXIS 14673 (M.D. Fla. Jan. 29, 2019) ......................... 11

*Guaman v. Ajna-Bar NYC.,*
    No. 12-cv-2987, 2013 U.S. Dist. LEXIS 16206 (S.D.N.Y. Feb. 5, 2013) ......................... 18

*Guinea v. Garrido Food Corp.,*
    No. 19-cv-5860, 2020 U.S. Dist. LEXIS 5476 (E.D.N.Y. Jan. 11, 2020) ......................... 20

*Hall v. ProSource Techs., LLC, et al.,*
    No. 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016) ......................... 21

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011, 1027 (9th Cir. 1988) ............................................................................ 5

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ............................................................. 14, 15, 16, 17

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.,*
    724 F. Supp. 160, 163 (S.D.N.Y. 1989) ............................................................................ 23

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516, 535 (3d Cir. 2004) ............................................................................ 5, 15

*Jemine v. Dennis,*
    901 F. Supp. 2d 365 (E.D.N.Y. 2012) ............................................................................ 24

*Joel A. v. Giuliani,*
    218 F.3d 132, 138-39 (2d Cir. 2000) ............................................................................ 18

**Page(s)**

*Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*,
   2016 U.S. Dist. LEXIS 152496, *51 (Ct. Dist. Ct. 2016) ...................................................... 27

*Kirsch v. Fleet Street, Ltd.*,
   148 F.3d 149, 172 (2d Cir. 1998) ............................................................................. 22

*Kochilas v. Nat'l Merch. Servs.*,
   No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553 (E.D.N.Y. Oct. 2, 2015) ............................ 26

*Kuzma v. Internal Revenue Service*,
   821 F.2d 930 (2d Cir.1987) ..................................................................................... 28

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ..................................................................................... 28

*Lora v. To-Rise LLC*,
   No. 16-cv-3604, 2020 U.S. Dist. LEXIS 252212 (E.D.N.Y. June 3, 2020) ...................... 6, 19

*Manley v. Midan Rest. Inc.*,
   No. 14-cv-1693, 2017 U.S. Dist. LEXIS 44560 (S.D.N.Y. Mar. 27, 2017) ................... *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072, 1079 (2d Cir. 1998) ............................................................................. 5

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
   No. 15-cv-441, 2016 U.S. Dist. LEXIS 79043 (N.D.N.Y. June 17, 2016) ...................... 22, 26

*Massiah v. MetroPlus Health Plan, Inc.*,
   No. 11-cv-5669, 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 20, 2012) ............... 6, 16, 19

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ..................................................................................... 22

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ..................................................................................... 6

*Mills v. Electric Auto–Lite Co.*,
   396 U.S. 375 (1970) ............................................................................................... 22

*Nichols v. Noom, Inc.*,
   No. 20-cv-3677, 2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022) ................... 11, 23

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ..................................................................................... 22

**Page(s)**

*Sukhnandan v. Royal Health Care of Long Island LLC*,
    No. 12-cv-4216, 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) ........................ 26

*Temp Servs. v. Am. Int'l Group, Inc.*,
    No. 08-cv-271, 2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012)………..…………….23

*Thompson v. Am. Limousine Grp, LLC*,
    No. 19-cv-4133, 2022 U.S. Dist. LEXIS 88045 (S.D.N.Y. May 13, 2022)...................... 8, 18

*Torres v. Gristede's Operating Corp.*,
    No. 04-cv-3316, 2010 U.S. DIst. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ........................ 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96, 121 (2d Cir. 2005) .............................................................................. 5

*Willix v. Healthfirst, Inc.*,
    No 07-cv-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011)............................ 28

*Wolinsky v. Scholastic, Inc.*,
    900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ........................................................... 18

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................. 14

*Zeltser v. Merrill Lynch & Co.*,
    No. 13-cv-1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014) ........................ 28

## Statutes, Rules and Regulations

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................*passim*

## Secondary Sources

Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* ("*Newberg*") (4th ed. 2002) ................................................ 4, 5, 7

Rule 23, Notes of Advisory Committee on 2018 Amendments..…………………………….7, 8

Third Circuit Task Force on Court Awarded Fees,
    108 F.R.D. 237 (1985) ..................................................................................... 23

## PRELIMINARY STATEMENT

Subject to final Court approval, the parties have settled the wage and hour claims of named plaintiffs Luis Lopez and Bobby Morrison (the "Named Plaintiffs"), a collective pursuant to Section 216(b) of the Fair Labor Standards Act, and a Federal Rule of Civil Procedure 23 class (altogether, the "Plaintiffs") against defendants Universal Protection Service, LLC d/b/a Allied Universal Security Services and AlliedBarton Security Services LLC (the "Defendants") for up to $650,000.00. The proposed settlement resolves all claims in the lawsuit alleging that Defendants failed to pay its Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport correctly pursuant to the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA"). On May 30, 2023, the Court preliminarily approved the Parties' proposed settlement, certified the FLSA Collective and Class for purposes of settlement[1], appointed class counsel, and authorized the issuance of Notice to Class Members. (*See* Dkt. No. 40, the "Preliminary Approval Order").

By this motion, Plaintiffs respectfully request that the Court: (1) grant final approval of the Revised Settlement Agreement and Release, filed with the Court at Docket No. 39-1 ("Revised Settlement Agreement" or "Agreement"); (2) approve the enhancement payments to the Named Plaintiffs in the amount of two thousand five hundred dollars ($2,500.00) each, for a total of five thousand dollars ($5,000.00); (3) approve an award of attorneys' fees in the amount of $213,470.16 (1/3 of the Settlement Amount after subtracting litigation expenses) and reimbursement of litigation expenses in the amount of $9,589.50; (4) approve Settlement Administrator fees

---

[1] As set forth in the Preliminary Approval Order, the Court conditionally certified an FLSA Collective, consisting of: all persons formerly employed as Operations Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between April 7, 2019 and December 31, 2021 (the "FLSA Collective") (Dkt. No. 40 at ¶ 10), and a Settlement Class, consisting of: all persons formerly employed as Operations Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between August 23, 2015 and December 31, 202. (*Id.* at ¶ 18).

estimated to be $10,000.00; and (5) enter judgment dismissing the federal action with prejudice in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Court's Preliminary Approval Order, Notice and Claim Administration

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (the "Preliminary Approval Motion," Dkt. No. 35), and is not repeated here.

On May 4, 2023, the Court held an in-person motion hearing regarding the Preliminary Approval Motion, requesting certain revisions to the Settlement Agreement, Notice of Proposed Settlement, and Proposed Order. (*See* Docket Entry Dated 05/04/2023). After Plaintiffs' submission of these materials (Dkt. No. 39), the Court preliminarily approved the Parties' Revised Settlement Agreement, approved the revised Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and authorized the mailing of the Notice to the FLSA Collective and Class Members[2]. (Dkt. No. 40).

### II.    Results of Notice

On June 19, 2023, the Settlement Administrator, CPT Group, Inc. ("CPT") mailed the Notice packages to the list of sixty-four (64) Class Members provided to the Settlement Administrator by Defendants. (*See* Pelton Decl. ¶ 7; Declaration of CPT by Jennifer Forst ("Forst Decl.") ¶ 4, Ex. A). Of the sixty-four (64) Class Members, thirty-two (32) were members of the FLSA Collective and their Notice packets also included a Consent to Join Form in order for them

---

[2] Notably, including the Named Plaintiffs, fifteen (15) FLSA Collective Members had already opted-in to the Action prior to Preliminary Approval of the Settlement, all of whom ratified the terms of the Revised Settlement Agreement by signing it. (*See* Dkt. No. 39-2).

to participate in the FLSA Collective. (Forst Decl. ¶¶ 4, 5, Ex. A).[3] The Settlement Administrator also e-mailed the Notice packets to Class Members and FLSA Collective Members for whom e-mail addresses were provided.  (*Id.* ¶ 7).

The Notices advised Class Members and FLSA Collective Members of applicable deadlines and other events, including the Final Approval Hearing, how Class Members and FLSA Collective Members could participate in the Settlement, and how Class Members and FLSA Collective Members could obtain additional information regarding the case and settlement. (*See* Forst Decl. Exs. A, B).

Of the sixty-four Notice packets that were initially mailed, two (2) were returned as undeliverable without a forwarding address. (*Id.* ¶ 8).  For the Notices that were returned by the USPS as undeliverable without a forwarding address, the Settlement Administrator performed an advanced address search ("skip trace") on all of these addresses by using a nationally recognized location service. (*Id.*). Of these undeliverable notices, updated addresses were obtained and Notice was re-mailed to two (2) Class Members. (*Id.*). In addition, Class Counsel was contacted by three (3) Class Members who had not received the Notice and requested Notice to be re-sent to their current address. (Pelton Decl. ¶ 8). In total, the Settlement Administrator re-mailed five (5) Notice packets to Class Members. (Forst Decl. ¶ 9).  As of September 6, 2023, no Notice packets remained undeliverable with no forwarding address and where no new address was found through skip trace. (*Id.*).

The response to the Notices has been overwhelmingly positive. As of September 12, 2023, zero (0) Class Members have submitted a Request for Exclusion and zero Class Members objected

---

[3] As noted in the Revised Settlement Agreement, all FLSA Collective Members are also Class Members; however, not all Class Members are also FLSA Collective Members. Agmt. at ¶ 2.17.

to the Settlement, resulting in a 100% participation rate among the Class Members. (Forst Decl. ¶¶ 11, 12, 14). As of September 6, 2023 the Settlement Administrator had received twenty-five (25) timely-filed and valid Consent to Join Forms from FLSA Collective Members. (Forst Decl. ¶ 13). Inclusive of the FLSA Collective Members whom had previously opted-in to the case prior to the Settlement Administrator mailing Notice (i.e., the Opt-In Plaintiffs who signed the Settlement Agreement), a total of thirty (30) out of thirty-two (32) FLSA Collective Members have submitted a Consent to Join form in order to participate in the FLSA Collective portion of this case and the proposed settlement, which represents a 93.75% participating rate. (*Id.* ¶ 14).

## SETTLEMENT TERMS

The terms of the Settlement Agreement, which were preliminarily approved by the Court on May 30, 2023 (Dkt. No. 40) are summarized in Plaintiffs' Motion for Preliminary Approval of Class Settlement (Dkt. Nos. 33-35) and are not repeated here.

## ARGUMENT

### I.    Final Approval of the Settlement Agreement Is Appropriate

Because this is a class action, and because it involves FLSA claims, the Court must approve the settlement. The procedure for approval includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq*. (4th ed. 2002). This process safeguards class members' procedural

due process rights and enables the Court to fulfill its role as the guardian of class interests. The Court has already scrutinized the terms of the proposed settlement and required certain revisions (*see* Docket Entry Dated 05/04/2023), after which the Court preliminarily approved the proposed settlement. (Dkt. No. 40). Likewise, after revisions to the proposed settlement and notice, the Class Members and FLSA Collective Members were notified regarding the terms of the proposed settlement. (*See* Factual and Procedural Background Section II *supra*).

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("compromise of complex litigation is encouraged by the courts and favored by public policy"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Under Rule 23(e), to grant final approval of a settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable, and adequate." *Elliot v. Leatherstocking Corp*., No. 10-cv-934, 2012 U.S. Dist. LEXIS 171443, at *7 (N.D.N.Y. Dec. 4, 2012). In evaluating the fairness of a settlement, a court should examine "the terms of the stipulation and the negotiating process that led to such agreement." *Christine Asia Co. v. Jack Yun Ma*, No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836, at *35 (S.D.N.Y. Oct. 16, 2019). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between

experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (internal quotations omitted). Courts typically presume that a settlement "meets the requirements of due process" where the agreement was reached after "arm's length negotiation between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-5669, 2012 U.S. Dist. LEXIS 166383, at *14 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement").

If the settlement was achieved through experienced counsels' arm's-length negotiations, ""absent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Lora v. To-Rise LLC*, No. 16-cv-3604, 2020 U.S. Dist. LEXIS 252212, at *21-22 (E.D.N.Y. June 3, 2020). In evaluating the fairness of a settlement, "the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Massiah,* 2012 U.S. Dist. LEXIS 166383, at *6. In doing so, "the Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.*

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. (Dkt. No. 35) It is clear from the facts of this case that the parties reached this settlement only after significant negotiation, including exchange of class-wide wage and hour document discovery, numerous interviews with Plaintiffs and members of the Class and Collective, and settlement discussions with the aid of an experienced wage and hour class action mediator. In other words, the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful informal discovery.

## II.    The Settlement is Fair, Reasonable, and Adequate

### A.    Legal Standards for Evaluating Class Settlements

Rule 23(e)(1) approves the two-part settlement approval practice that has become standard in this Circuit, providing that the district court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class, if not already certified.  *See* F.R.C.P. 23(e)(1); Notes of Advisory Committee on 2018 Amendments.

Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members.  To make this determination, courts should examine a list of core concerns set forth by the Rule, specifically whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The Rule also requires the parties to identify all agreements made in connection with the proposed settlement and include an opportunity for class members to opt-out if the class was previously certified. Finally, the Rule provides a detailed procedure for Class Member objections and for seeking approval after an appeal.

Prior to the 2018 amendments to Rule 23, courts in the Second Circuit generally considered, and frequently continue to consider, the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. Many of these factors evaluate similar facts as the Rule 23(e) and are still relevant to evaluating the fairness of proposed class settlements. *See* Advisory Committee Notes (Rule 23(e)(2) factors not designed to displace any factor); *Christine Asia Co.* 2019 U.S. Dist. LEXIS 179836, at *37 ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors"). All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval. Finally, "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions… the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Thompson v. Am. Limousine Grp, LLC*, No. 19-cv-4133, 2022 U.S. Dist. LEXIS 88045, at *10-11 (S.D.N.Y. May 13, 2022). Accordingly, satisfaction of the Rule 23(e)(2) and *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the Rule 23(e)(2) and *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

**B.    The Settlement is Fair, Reasonable, and Adequate**

**1.    <u>The Named Plaintiffs and Class Counsel Have Adequately Represented the Class</u>**

The Named Plaintiffs have more than adequately represented the Class. The Named Plaintiffs as Class Representatives have no conflicts with the Class Members, no interests antagonistic to those of the Class, and have actively participated in the Action on behalf of their own claims and the claims of Class Members. (Pelton Decl. ¶ 16). Class Counsel have extensive experience in litigating and settling wage and hour class actions and have already expended

substantial time, work and resources into prosecuting this matter.  (Pelton Decl. ¶¶ 20-26). As a result, Class Counsel has reached a fair settlement on behalf of Class Members.

### 2.    The Settlement Was Negotiated at Arm's Length

The parties have litigated this Action for approximately eighteen (18) months, engaging in formal and informal discovery and settlement negotiations. (*Supra* at Factual and Procedural Background). The settlement was reached with the aid of a neutral mediator experienced in wage and hour class actions. (Pelton Decl. ¶ 22). All such settlement negotiations, before, during and after the mediation, were conducted at arm's length. (*Id.*). As such, the settlement negotiation procedure has been fair to Plaintiffs and Class Members.

### 3.    The Relief for Class Members is Adequate and Fair

Rule 23(e) provides that determination of the adequacy and fairness of Class Members' relief take into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)

F.R.C.P. 23(e)(2).

The parties' Preliminary Approval Motion set forth in detail the damages calculations created by Class Counsel, the settlement allocation, the risks Plaintiffs would face in proceeding with the litigation and establishing their requested damages, and the advantages that this settlement provides to the Class Members. (Dkt. No. 35 at pp. 12-13). Particularly given the terms of the settlement providing for a substantial payment within a relatively short timeline after Final Approval, this Settlement Agreement provides a significant benefit for Class Members. Plaintiffs furthermore recognize the weight of the risks that would be incurred by further litigating this matter

and attempting to prove their damages at trial, given the nature of the claims being for work performed "off-the-clock" for which there are no records. (Pelton Decl. ¶¶ 24-25).

As such, given the benefit to the Class Members and the risks of further litigation, this settlement easily falls within the range of reasonableness.

**The Allocation of the Settlement Among Class Members**

The Preliminary Approval Motion describes in detail the allocation of the Settlement Fund, using a formula that takes into account the relative strengths and weaknesses of Class Members' claims depending upon their total weeks worked during the FLSA and NYLL statutory periods. (Dkt. No. 34 at pp. 6-7; Agmt. ¶ 4.3). The allocation uses a points-based method to determine the percentage of the Net Settlement Fund to be awarded to each participating Class and Collective Member. (*Id.*). The Settlement Agreement provides that, the entire portion of the Settlement Amount allocated to Class Members will be paid out to the Class Members, except for amounts allocated to Class Members who opt out of the Settlement or amounts allocated to Collective Members who failed to opt-in to the Settlement. (*Id.*). At this time, zero (0) Class Members have opted out or objected to the Settlement Agreement, such that the entirety of the Settlement allocated to Class Members will be paid, while a total of $419.15 of the portion of the Settlement allocated to the FLSA Collective will be retained by Defendants as a result of two (2) Collective Members not joining the FLSA Collective. (Forst Decl. ¶¶ 14, 15). Prior to the deduction of employee-side state and federal taxes, the average settlement payment is estimated to be $6,423.60, with the highest settlement payment is estimated to be $21,524.96 and the lowest estimated payment is $58.53. (*Id.* ¶ 16).

The Settlement Agreement also provides for the Named Plaintiffs to receive a modest service award of two thousand five hundred dollars ($2,500.00) each. As set forth *infra* at

Argument § IV, service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Nichols v. Noom, Inc.*, No. 20-cv-3677, 2022 U.S. Dist. LEXIS 123146, at *35 (S.D.N.Y. July 12, 2022) (approving service awards ranging from $5,000 to $12,500 for 15 class representatives).

**The Releases**

The Revised Settlement Agreement provides that all Class Members who do not timely opt out will release all state law wage claims and that all Opt-in Plaintiffs will release all federal wage claims under the FLSA. (Agmt. ¶¶ 5.1, 5.2)[4]. The releases are limited to wage claims that arise or accrue through preliminary approval of the settlement.  As such, they are "narrowly limited to claims arising from the specific facts giving rise to this action." *Grant v. Ocwen Loan Servicing, LLC*, No. 15-cv-1376, 2019 U.S. Dist. LEXIS 14673, at *21 (M.D. Fla. Jan. 29, 2019) (finding that such releases operate in an equitable manner).

**The Costs and Risks of Continued Litigation**

As set forth in the Preliminary Approval Motion, the parties and the Court have already expended significant time, expense and resources on this litigation. The parties have engaged in class-wide written and document discovery, and the parties attended a full-day mediation. The parties, with the assistance of a private mediator, have pursued formal and informal settlement negotiations. Further litigation would entail significant additional expense and delay, including potential collective and class certification motion practice, potential summary judgment motions,

---

[4] The two (2) FLSA Collective Members who chose not to opt-in to the Action will not release their FLSA claims against Defendants. (Agmt. ¶ 3.9 (C)).

and, if a class and/or collective is certified for trial, a complicated trial would be necessary, featuring extensive testimony by the Named Plaintiffs, the Opt-in Plaintiffs and additional employees of Defendants. (Pelton Decl. ¶ 21). As such, resolution of liability issues and damages calculations, potential extensive motion practice, trial, and the potential appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty.

**Distribution of Relief and Claim Processing**

The Notice and Consent to Join Form procedure is an effective means to guarantee that the Settlement Administrator will be able to send settlement checks to all Class and Collective Members who wish to participate in the Settlement. As set forth *supra* at 3, the Settlement Administrator has taken all reasonable steps to obtain the correct address of any Class Member for whom a Notice package was returned as undeliverable, and Class Counsel have also communicated with Class Members. The Class List contained names and addresses for 64 Class Members. As of filing, none of the Notice packets remained undeliverable, after Notices were re-mailed to five (5) Class Members based on skip-traces and information provided by Class Counsel. (Forst Decl. ¶ 9). As such, all of the Class Members will receive an Individual Settlement Payment from the settlement. (*Id.* ¶ 14). In addition, 30 out of 32 of the FLSA Collective Members have opted-in to the action, either by submitting their Consent to Join form to the Settlement Administrator or by filing their Consent to Join form prior to the preliminary approval of the proposed Settlement, such that those 30 individuals will also receive the portion of their settlement allocation attributable to their FLSA claims. (*Id.* ¶ 14; Pelton Decl. ¶ 14).

**Attorneys' Fee Terms**

The Settlement Agreement provides that Class Counsel shall receive one-third (1/3) of the Settlement Amount after subtraction of costs. (Agmt. ¶ 4.5). This payment is fair, set forth in the retainer agreements signed by the Named Plaintiffs, and clearly communicated to Class Members via the Notice. (Pelton Decl. ¶ 30; Forst Decl. Exs. A, B). Class Counsel shall receive a payment from the Settlement Administrator at the same time as settlement checks are mailed to Participating Class Members. (Pelton Decl. ¶ 32). Further briefing on Class Counsel's attorney-fee request is set forth *infra* at Argument § V.

**Outside or Additional Agreements**

The parties have not made any other agreements or settlements to resolve the claims of the Plaintiffs or the Collective and/or Class in this Action, including agreements pertaining to attorneys' fee or other payments. (Pelton Decl. ¶ 31). All of the terms and provisions agreed to by the parties in connection with the settlement of this Action and of the Plaintiffs' and Collective and Class claims are set forth in the Revised Settlement Agreement filed with the Court. (*Id.*).

### 4.    Class Members Had an Opportunity to Opt-Out

The Settlement Agreement and the Notice both clearly set forth the form and procedures to follow should Class Members prefer to opt-out of the Class and the settlement.  The Class Members have received the Notice and are informed of their opportunity to opt-out or object to the settlement. As of this date, zero (0) Class Members have elected to either opt-out or object to the Settlement. (Forst Decl. ¶¶ 11, 12).

### C.    The *Grinnell* Factors Favor Final Approval

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement early in the litigation process, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Class actions are

generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources." *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *9. In particular, NYLL/FLSA hybrid collective and class actions are "larger and more complex than the typical FLSA collective action," *Manley v. Midan Rest., Inc.*, No. 14-cv-1693, 2017 U.S. Dist. LEXIS 44560, at *23 (S.D.N.Y. Mar. 27, 2017) and "typically involve complex mixed questions of fact and law." *Chen v. Xpressa at Terminal 4 JFK LLC*, No. 15-cv-1347, 2021 U.S. Dist. LEXIS 189942, at *18 (E.D.N.Y. Oct. 1, 2021). Settlements "avoid[] the costs, delays and multitude of other problems associated with [class actions]." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with over 60 Class Members. (Pelton Decl. ¶ 19).

As set forth *supra* at 11, continued litigation would require significant expenditure of resources of the parties, Plaintiffs, potential FLSA Collective Members, potential Class Members and the Court and would seriously delay monetary recovery, if any, of Plaintiffs and Collective and Class Members. This settlement avoids further expenditure of time, expense, and resources that would be required for the long and complex litigation, including motion practice and ultimately trial of Plaintiffs' liability and damages claims and instead makes monetary relief available to the potential collective and class members in a prompt and efficient manner

2.    **The Reaction of the Class Has Been Positive**
       (***Grinnell*** **Factor 2**)

As previously stated, the response to the notices has been overwhelmingly positive. (Forst Decl. ¶¶ 10-13). Zero (0) Class Members have opted out or submitted an objection to the settlement. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out). Since "the

class's reaction to the settlement was very positive," this factor weighs strongly in favor of approval. *Manley*, 2017 U.S. Dist. LEXIS 44560, at *11.

In addition to 100% participation among Class Members, there is a 93.75% participation rate among FLSA Collective Members. (Forst Decl. ¶ 14). The participation rates result in all but $419.15 of the Total Settlement Amount being paid by Defendants toward the Funded Settlement Amount. (*Id.* at ¶ 15). This high participation rate demonstrates a strong positive reaction by the Class and Collective Members, and supports approval of the settlement. *See, e.g., Butt v. Megabus Northeast LLC,* No. 11-cv-3993 (JPO), 2012 U.S. Dist. LEXIS 137683, at *12-13 (S.D.N.Y. Sept. 12, 2012) (Approving class and collective settlement with overall participation rate of seventy-three percent (73%)).

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Throughout the litigation, the parties exchanged a significant amount of pre-mediation documents, analyzed the documents and conducted interviews to appreciate the merits, strengths and weakness of the claims and defenses in this Action.  There is no threshold discovery must reach in order to satisfy this inquiry; the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

As recognized by the Court in granting preliminary approval, the parties' discovery here meets this standard. (Dkt. No. 40 at ¶ 24).

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Class Counsel believes this case is strong, it is subject to considerable risk as to liability, class issues, and damages. In weighing the risks of establishing liability, retaining class treatment, and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). Given the burden of proving liability and damages under the FLSA and NYLL, and given that Plaintiffs' summary judgment motion for liability was denied in part, it is clear that "the claims and defenses are fact-intensive and present risks" to both parties at a trial on the merits. *Manley*, 2017 U.S. Dist. LEXIS 44560, at *13; *see also Massiah*, 2012 U.S. Dist. LEXIS 166383, at *11-*12.   In contrast, this settlement makes recovery available to Class Members in an efficient fashion.  This factor therefore weighs in favor of final approval.

### 5.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. As set forth *supra* at Argument Section I(B)(3), Plaintiffs would likely face substantial motion practice in certifying an FLSA Collective and Rule 23 class, likely followed by de-certification motion practice prior to trial.  Risk, expense, and delay are involved in each of these steps in the litigation.  Settlement eliminates this risk, expense, and delay. *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *11 (discussing the burdens and risks of maintaining class status through trial).

This factor favors final approval.

### 6.    Defendants' Ability to Withstand a Greater Judgment is Not at Issue (*Grinnell* Factor 7)

Defendants are a large, international security agency with substantial resources. *See* https://www.aus.com/about-us/at-a-glance.  Accordingly, Defendants' ability to withstand a greater judgment was not a substantial factor in the parties' settlement negotiations.  However,

16

even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). In this instance, Defendants' financial condition was not an issue explored during discovery such that it is undetermined whether Defendants could withstand a larger judgment, and therefore, "this factor is neutral and does not preclude final settlement approval." *Manley*, 2017 U.S. Dist. LEXIS 44560, at *14.

7.     **The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

As described *supra* at Argument Section I(B)(3), Class Counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, $650,000. (*See* Agmt. ¶ 4.1). The allocation formula is closely tied to the merits and relative strengths and weaknesses of Class and FLSA Collective Members' claims, depending upon the total duration and the dates of their employment. (*Id.*). The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial, survived an appeal, and were able to collect any judgment obtained. (*See* Pelton Decl. in Supp. Of Mot. For Prelim. Approval, Dkt. No. 34 at ¶ 24). Prior to the deduction of employee-side state and federal taxes, the average settlement payment is estimated to be $6,423.60. (Forst Decl. ¶ 16).

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. Zero (0) Class Members have opted-out or objected to the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*,

228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court

should grant its final approval.

### III.    Approval of FLSA Collective Settlement Is Appropriate Pursuant To *Cheeks*

The "standard for approval of an FLSA settlement is lower than for a class action under

Rule 23" since FLSA collective actions "do not implicate the same due process concerns" in that

parties will not be bound by the settlement unless they opt in. *Thompson*, 2022 U.S. Dist. LEXIS

88045, at \*10-11. Courts approve FLSA settlements when "they are reached as a result of contested

litigation to resolve *bona fide* disputes," which can be determined from the "adversarial nature of

a litigated FLSA case" and whether "the proposed FLSA settlement reflects a reasonable

compromise over contested issues." *Guaman v. Ajna-Bar NYC*, No. 12-cv-2987, 2013 U.S. Dist.

LEXIS 16206, at \*15-16 (S.D.N.Y. Feb. 5, 2013).  As discussed extensively *infra*, this settlement

represents a reasonable compromise as a result an arm's-length negotiation between experienced

counsel and should be approved. *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d

Cir. 2015). Courts in this circuit have identified several factors for determining whether a proposed

FLSA settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see*

*also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

As set forth supra §§ II(B)(3) and III, the settlement: (1) is substantial and within the range

of reasonableness of recovery when compared to the various possibilities of recovery in light of

the litigation risks faced; (2) avoids the burden and expense of discovery, motion practice, and a

trial on the merits that would have an uncertain potential outcome; (3) eliminates the serious litigation risks faced, including certification and decertification risks; (4) was reached with the help of a third-party neutral and resolved through an arm's-length settlement process with attorneys well-versed in complex wage and hour litigation; and (5) was reached by and through experienced counsel who were able to fully evaluate the strengths and weaknesses of the claims and defenses. As such, settlement of the FLSA claims in this case meet the *Cheeks* "fair and reasonable" standard. *See* 796 F.3d at 206.

## IV.    Enhancement Awards Are Appropriate in This Case

The Named Plaintiffs also seek service awards for their work and willingness to represent the class. Zero (0) Class Members have objected to the Enhancement Awards. (Pelton Decl. ¶ 20). The Enhancement Awards are consistent with payments made to named plaintiffs in this Circuit, other jurisdictions, and in other wage and hour cases.

In light of the Named Plaintiffs' efforts resulting in a substantial settlement on behalf of the settlement class, the Named Plaintiffs are entitled to an Enhancement Award of two thousand five hundred dollars ($2,500.00) each (for a total of $5,000.00), to be distributed from the Settlement Fund. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, at *8 (approving service awards of $10,000 and $5,000); *see also De La Cruz v. Manhattan Parking Grp, LLC*, No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267, at *6 (S.D.N.Y. July 12, 2022) (approving $15,000 service awards for named plaintiffs); *Lora*, 2020 U.S. Dist. LEXIS 252212, at *22, fn. 3 (service awards of $10,000 and $15,000 "are reasonable in light of the burdens place

on the Lead Plaintiffs during the 4 years of litigation and in consideration of the range of recovery for all Plaintiffs"); *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2010 U.S. Dist. LEXIS 139144, at *22-*23 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).

Here, the Named Plaintiffs performed substantial services and bore substantial risks for the class. Their services began with the Named Plaintiffs bringing the case that was eventually resolved in the settlement for over 60 employees of Defendants to recover alleged unpaid regular wage, unpaid overtime, and statutory wage statement damages. (*See generally* Dkt. No. 32 (Amended Complaint)). The Named Plaintiffs represented the class by providing information to Class Counsel, participating in the drafting of the complaint, providing evidence, working with Class Counsel in developing the case, participating in the settlement negotiations including sitting for a lengthy mediation, and ultimately concluding a successful settlement for the class. (Pelton Decl. ¶¶ 16-19).  The Named Plaintiffs also assumed substantial professional risks and burdens in bringing the litigation. (*Id.* ¶ 18). Thus, Enhancement Awards to the Named Plaintiffs are appropriate.

## V.  Class Counsel is Entitled to a Reasonable Fee of One-Third of the Total Settlement Amount

Class Counsel respectfully moves the Court for an award of attorneys' fees and reimbursement of expenses in the amount of one-third (1/3) of the Settlement Amount (after subtracting litigation costs), or $213,470.16. Class Counsel's contemporaneous billing records are attached as Exhibit A to the Pelton Declaration. The rates set forth in the billing records are in line with rates approved in recent wage and hour cases in this district. *See, e.g., Guinea v. Garrido Food Corp.*, No. 19-CV-5860, 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-

$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036, U.S. Dist. LEXIS 151528, at *35-36 (S.D.N.Y. Aug. 10, 2021), *aff'd* at 2021 U.S. Dist. LEXIS 163810 (discussing and approving Pelton Graham's attorney and paralegal rates); *Hall*, 2016 U.S. Dist. LEXIS 53791, at *37 (approving Plaintiffs' counsel's rates).  Throughout the litigation and settlement negotiations, Class Counsel's efforts have been without compensation (Pelton Decl. ¶ 29), and their entitlement to be paid has been wholly contingent upon achieving a good result.

A.    **The Terms in the Named Plaintiffs' Retainer, the Settlement Agreement and the Class Settlement Notice Entitle Class Counsel to One-Third (1/3) of the Total Settlement Amount**

The Named Plaintiffs specifically agreed in their retainer agreements that Class Counsel would recover up to one-third (1/3) of the settlement, plus litigation costs. (*Id.*). The Court preliminarily approved the Settlement Agreement in this case that was agreed to by the Named Plaintiffs, on behalf of the class, and the Defendants. (*See* Dkt. No. 40).

Moreover, the Settlement Agreement provides that "Class Counsel will petition the Court for an award of attorneys' fees in the amount of $213,470.16, or 33.33% of the Total Settlement Amount, and costs not to exceed $10,000." (Agmt. at ¶ 4.5).  Finally, the Court-approved Notice that was mailed to all Class Members stated the following:

> "Class Counsel will ask the Court to approve payment of up to one-third (33.33%) of the settlement amount to them for attorneys' fees"

(Forst Decl., Ex. A ¶ 16).  In accordance with the numerous agreed upon provisions, an award of $213,470.16 in attorneys' fees and costs, which is one-third (1/3) of the Settlement Amount after subtracting actual litigation costs, is appropriate.

B.    **The Percentage of the Fund Method of Awarding Attorneys' Fees is Appropriate in Common Fund Cases**

In common fund situations, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000) (*citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost. *Id.* (citing *Boeing*, 444 U.S. at 478); *see also Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 392 (1970)).

What constitutes a reasonable fee is properly committed to the sound discretion of the district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998), and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding. *Goldberger*, 209 F.3d at 47.  In *Blum v. Stenson,* the Supreme Court observed that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum,* 465 U.S. 886, 900 n. 16 (1984). The Second Circuit has accordingly recognized that *Blum* indicates that the percentage-of-the-fund method is a viable method for awarding reasonable attorneys' fees. *Goldberger*, 209 F.3d at 49 (*citing Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)). Moreover, the trend in this Circuit is toward the percentage method, *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *60 (citing *McDaniel v. Cty of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)), which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 122 (internal quotations omitted); *see also Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 15-cv-441, 2016 U.S. Dist. LEXIS 79043, at *21 (N.D.N.Y. June 17, 2016) ("The courts of the Second Circuit tend to evaluate requests for attorney fees using the percentage of the fund method") (internal citations omitted).

The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. *Savoie*, 166 F.3d at 460-61, (citing Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–59 (1985)). The percentage of the fund method "provides a powerful incentive for the efficient prosecution and early resolution of the action." *Nichols*, 2022 U.S. Dist. LEXIS 123146, at *31. It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. *Grinnell*, 495 F.2d at 471. Moreover, the lodestar method is time-consuming and burdensome on the courts. *See*, *e.g.*, *Goldberger*, 209 F.3d at 49 (under the lodestar method, "there was an inevitable waste of judicial resources"); *Asare v. Change Group N.Y.*, No. 12-cv-3371, 2013 U.S. Dist. LEXIS 165935, *44-45 (S.D.N.Y. Nov. 15, 2013). Finally, "[t]he percentage method is widely believed preferable in a case such as this one where the Plaintiffs agreed to pay counsel on a contingency fee basis," *Temp Servs. v. Am. Int'l Group, Inc.* 2012 U.S. Dist. LEXIS 86474, *21-22 (D.S.C. June 22, 2012), and "is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Asare*, 2013 U.S. Dist. LEXIS 165935 at *43-46.

### C.   An Award of One-Third (1/3) of the Total Settlement Amount as Attorneys' Fees is Reasonable

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (citing *In re Union Carbide Corp. Consumer Products*

*Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). Here, all of the *Goldberger* factors weigh in favor of awarding Class Counsel their requested fees.

i.    **Class Counsel has expended significant time and effort on this case**

The procedural and factual history of this case up to the Court's Preliminary Approval Order is detailed in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. (Dkt. No. 35). It is clear from the amount of pre-litigation research and work, written and document discovery, witness interviews, and the substantial settlement negotiations, that Class Counsel expended a significant amount of time and labor on this case. Accordingly, this factor weighs in favor of awarding Class Counsel's requested fees.

ii.    **The large and complex nature of this litigation warrants the award of attorneys' fees being requested**

Hybrid FLSA and state wage-and-hour cases are often large and complex. *See*, *e.g.*, *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action. . . "). This one was no different, consisting of a multiple position FLSA collective action and NYLL state class action, covering over 60 Class Members such that the matter's "complexity supports counsel's motion for fees." *Chen*, 2021 U.S. Dist. LEXIS 189942, at *18; *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation"). Thus, this factor favors awarding Class Counsel the requested fees.

iii.    **Class Counsel took on a large amount of risk in prosecuting this case**

Class Counsel took on substantial risk in prosecuting this action. As discussed *supra* at 11, this case involves complex factual and legal issues and significant risk as to both liability and

damages. The Named Plaintiffs and the FLSA Collective and Class were far from guaranteed to prevail on all of these issues. Further, as Class Counsel prosecuted this case on a contingency basis, advancing both fees and costs, counsel took on the risk that they would not ultimately recover anything for their time and effort. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Febus, LLC*, 870 F. Supp. 2d at 340.

Accordingly, the award of fees is appropriate in cases like this one where Class Counsel's fee entitlement is entirely contingent upon success. *See Manley*, 2017 U.S. Dist. LEXIS 44560, at *24.

### iv.    Class Counsel's representation has been of the highest quality

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Manley*, 2017 U.S. Dist. LEXIS 44560, at *25. A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Guzman v. Joesons Auto Parts*, No. 11-cv-4543, 2013 U.S. Dist. LEXIS 68969, at *8 (E.D.N.Y. May 15, 2013).

As discussed *supra* at Argument § II, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. Furthermore, Class Counsel has significant experience prosecuting large-scale wage and hour actions including hybrid FLSA and NYLL overtime cases such as this one. Consequently, Class Counsel should be awarded the requested fees.

### v.    The requested fees are reasonable in relation to the settlement

Class Counsel's fee request of one-third (33.33%) of the Settlement Fund is "reasonable and consistent with the norms of class litigation in this circuit," including wage and hour cases, and "should be awarded on the basis of the total funds made available." *Kochilas v. Nat'l Merch. Servs.,* No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553, at *20-21 (E.D.N.Y. Oct. 2, 2015) (citations omitted); *see also Chen*, 2021 U.S. Dist. LEXIS 189942, at *19-20 (approving one-third fee award); *Manley*, 2017 U.S. Dist. LEXIS 44560, at *26 (approving one-third fee award); *Marroquin Alas*, 2016 U.S. Dist. LEXIS 78043, at *26 (32% of gross settlement fund and citing cases); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 U.S. Dist. LEXIS 65261, at *13 (S.D.N.Y. May 7, 2015) (one-third); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216, 2014 U.S. Dist. LEXIS 105596, at *26-*28 (S.D.N.Y. July 31, 2014) (33.33%). Accordingly, this factor weighs in favor of approval of the requested fees.

### vi.    Public policy weighs in favor of awarding attorneys' fees

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Kochilas*, 2015 U.S. Dist. LEXIS 135553, at *19.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id.* (*citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.*  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id.* (*citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest")). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and state wage and hour laws. *Id.*

26

Based upon the negotiated fee agreement in this case, the favorable results obtained for the Plaintiffs, the typical percentage of compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class Counsel is entitled to a reasonable attorneys' fees award of one-third (1/3) of the Total Settlement Amount.

**D.    The Lodestar "Cross Check" Further Supports an Award to Class Counsel of One-Third of the Settlement Amount**

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F.3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.* After calculating the lodestar as the product of the number of hours reasonably expended multiplied by a reasonable hourly rate, "Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *17 (citing *Goldberger*, 209 F.3d at 47).

Here, the actual lodestar amount, to date, incurred by Class Counsel is approximately $90,681.03. (*See* Pelton Decl. ¶ 41, Ex. A (Class Counsel's Contemporaneous Time Records)). The fees that Class Counsel are seeking represents a modest 2.35 multiplier of their current lodestar which is reasonable in light of the *Goldberger* factors, and is in line with other cases in the Second Circuit. *See, e.g., Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, 2016 U.S. Dist. LEXIS 152496, *51 (Ct. Dist. Ct. 2016) (approving a multiplier of 2.77 as "well within the range of lodestar multipliers that are regularly approved by district courts in the Second Circuit"); *see also In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691, 2015

WL 4560206, at *3 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."). In addition to the time already spent in bringing this action, Class Counsel anticipates that it will have to perform work after the final approval hearing, including answering additional calls from Class Members, working with the Settlement Administrator to answer class member questions and ensuring that the Settlement Amount is administered in accordance with the parties' agreement. This additional time also supports Class Counsel's fee request. "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *19; *see also Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531, 2014 U.S. Dist. LEXIS 135635 at *23-24 (S.D.N.Y. Sept. 23, 2014). As such, the ratio of Class Counsel's lodestar to the fee request will continue to diminish over time, as Class Counsel spends additional time working on this case. (Pelton Decl. ¶ 40).

      **E.**    **Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs**

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *see also Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."); *Zeltser,* 2014 U.S. Dist. LEXIS 135635 at *24 ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees,

transportation, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class."). Here, Class Counsel's fees incurred in prosecuting this action are $9,589.50, and include filing fees, process server fees, data entry contractor costs, and mediation fees, which were necessary to the prosecution of this action. Because such costs are reasonable and were incidental and necessary to the representation of the class, the Court should award Class Counsel reimbursement of their litigation costs as part of their requested fees.

## VI.    The Settlement Administrator's Fees Should Be Approved

CPT Group, Inc. ("CPT") a third-party settlement administrator, was retained to administer the settlement.  The Settlement Administrator's fees are estimated to be $10,000.00, including fees incurred and anticipated future costs for completion of the administration. (Forst Decl. ¶ 17). In order to ensure the best usage of the Settlement proceeds, Plaintiffs also reached out to another settlement administrator, American Legal Claims Services, to receive an estimate; that firm's estimated fee was several thousand dollars higher than that of CPT. (Pelton Decl. ¶ 44). Accordingly, Plaintiffs respectfully request that the Court approve payment of the Settlement Administrator's fees in the amount of $10,000.00. Courts regularly award administrative costs associated with providing notice to the class. *See Flores v. Mamma Lombardi's of Holbrook, Inc.,* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (noting "Courts within this district have awarded up to $50,000 for the settlement claims administrator" and finding estimated fees of $33,500 to the settlement administrator as reasonable); *see also De La Cruz* 2022 U.S. Dist. LEXIS 123267, at *6-7 (approving $55,000 in settlement administration fees).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Final Approval of Class Settlement enter the Proposed Order.


Dated: New York, New York
September 12, 2023            **PELTON GRAHAM LLC**


By: ___*/s/ Brent E. Pelton*_____
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the FLSA Collective and
Settlement Class*