IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS LOPEZ and BOBBY MORRISON, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>-against-<br><br>UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES and ALLIEDBARTON SECURITY SERVICES LLC, Jointly and Severally,<br><br>       Defendants. | Case No. 1:22-cv-1990 (SJB) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE AND CLASS SETTLEMENT AND FOR APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

**PELTON GRAHAM LLC**

Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the FLSA Collective and Settlement Class*

## TABLE OF CONTENTS

                                                                   **Page**

Table of Authorities ............................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND. ...................................................... 1

SETTLEMENT TERMS .................................................................................................... 3

ARGUMENT ..................................................................................................................... 3

I.      Final Approval of the Settlement Is Appropriate ................................................... 3

II.     The Settlement is Fair, Reasonable, and Adequate ................................................ 4

        A.      Procedural Fairness Is Satisfied .................................................................. 4

        B.      The Settlement is Fair, Reasonable, and Adequate ................................... 5

                1.      The Class Representatives and Class Counsel Have Adequately Represented the Class .................................................................... 5

                2.      The Settlement Was Negotiated at Arm's Length ...................................... 5

        B.      The Substance of the Settlement is Fair and Equtiable ........................................ 6

                1.      The Relief for Class Members is Adequate and Fair ................................. 6

                2.      The Settlement Provides Equitable Treatment for All Class Members .... 10

        C.      Fairness Is Satisfied Under the *Moses* Analysis................................................... 12

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*D'Angelo v. Hunter Bus. Sch., Inc.*,
  No. 21-cv-3334, 2023 U.S. Dist. LEXIS 131029, at *29-30 (E.D.N.Y. July 28, 2023).........10

*Doxey v. Cmty. Bank, N.A.*,
  No. 8:19-cv-919, 2021 U.S. Dist. LEXIS 169735, at *33 (N.D.N.Y. Sept. 8, 2021) .............10

*Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*,
  No. 21-cv-3284, 2022 U.S. Dist. LEXIS 69998, at *8-9 (E.D.N.Y. Apr. 14, 2022) ................9

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594, 602 (9th Cir. 2021)................................................................................7-8

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023)....................................................................................*passim*

*Roes, 1-2 v. SFBSC Mgmt, LLC*,
  944 F.3d 1035, 1049 n.19 (9th Cir. 2019)..................................................................... 5

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ....................................................................................................................*passim*

Class Action Fairness Act (CAFA)
  28 U.S.C § 1712 ................................................................................................... 3, 4, 8

## PRELIMINARY STATEMENT

The parties seek Court approval of a settlement of Plaintiffs' wage and hour claims on behalf of named plaintiffs Luis Lopez and Bobby Morrison (the "Named Plaintiffs"), a collective pursuant to Section 216(b) of the Fair Labor Standards Act, and a Federal Rule of Civil Procedure 23 settlement class consisting of approximately sixty-four (64) individuals (collectively, "Plaintiffs"). Pending Court approval, the parties have settled all claims asserted in this matter regarding wages paid by Universal Protection Service, LLC d/b/a Allied Universal Security Services and AlliedBarton Security Services LLC (the "Defendants") to Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport. The parties have agreed upon a settlement of $650,000 (the "Settlement Amount") in exchange for a narrow release of Plaintiffs' wage and hour claims.

The recent Second Circuit decision in *Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023), clarified the examination of the fairness of a class settlement required by Rule 23(e)(2). Under the analysis set forth by the Second Circuit, it is clear that, upon a holistic examination of the entirety of the class action settlement, including the attorneys' fee award and incentive awards, the relief provided to class members is adequate and class members are treated equitably. Thus, even without attaching a presumption of fairness in light of the parties' arms-length negotiation of the settlement, as mandated by the Second Circuit, this class settlement is fair, adequate and equitable.

## FACTUAL AND PROCEDURAL BACKGROUND

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (the "Prelim. Approval Memo."). (Dkt. No. 35). On May 4, 2023, the Court held an in-person hearing regarding the Preliminary Approval Motion, requesting certain revisions

1

to the Settlement Agreement, Notice of Proposed Settlement, and Proposed Order. (*See* Docket Entry Dated 05/04/2023). After Plaintiffs' submission of these materials (Dkt. No. 39), the Court preliminarily approved the Parties' Revised Settlement Agreement, approved the revised Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and authorized the mailing of the Notice to the FLSA Collective and Class Members. (Dkt. No. 40).

Results of distribution of the Notice are detailed in the Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Settlement (the "Final Approval Memo."). (Dkt. No. 45). Of the sixty-four (64) Notice packets that were initially mailed, two (2) were returned as undeliverable; updated addresses were obtained, and Notice was re-mailed to both individuals with no further returns. (*Id.* at 3). Notice was also re-mailed to three (3) Class Members upon their request. (*Id.*). Class Members were not required to return a Claim Form in order to participate; however, Opt-in Plaintiffs who had not previously signed the settlement agreement were required to return Consent to Join forms in order to participate in the settlement and release their FLSA claims. (*Id.* at 4). Ultimately, thirty-one (31) out of thirty-two (32) Opt-in Plaintiffs participated in settlement, either by signing the settlement agreement or returning Consent to Join form. (Supplemental Declaration of Brent E. Pelton In Support of Plaintiffs' Motion for Final Approval ["Suppl. Pelton Decl."] at ¶¶ 4, 5).

On September 27, 2023, the parties participated in a hearing on Plaintiffs' Motion for Final Approval before Judge Bulsara. (Minute Entry and Order dated Sept. 27, 2023). At that time, the Court requested additional briefing regarding the fairness of the settlement in light of the Second Circuit's discussion of the appropriate examination of the fairness of class action settlements in *Moses*. (*Id.*).

2

**SETTLEMENT TERMS**

The terms of the Settlement Agreement, which were preliminarily approved by the Court on May 30, 2023 (Dkt. No. 40), are summarized in Plaintiffs' Motion for Preliminary Approval of Class Settlement (Dkt. Nos. 33-35) and are not repeated here.

**ARGUMENT**

**I.     Final Approval of the Settlement Agreement Is Appropriate**

In remanding approval of a class action settlement, the Second Circuit held in *Moses v. N.Y. Times* that "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account – among other substantive considerations stated in the rule – the proposed attorneys' fees and incentive awards." *Moses*, 79 F.4th at 243. In analyzing the text of Rule 23(e)(2), the Court rejected the precedents arising under earlier tests of "applying a presumption of fairness to proposed settlements arising from an arms-length agreement," *id.* at 243, and "reviewing the appropriateness of the attorneys' fee and incentive awards separately from… consideration of the fairness, reasonable and adequacy of the settlement." *Id.* at 246. The Second Circuit also rejected a conclusion of the lower court pertaining specifically to coupon settlements and the applicability of the Class Action Fairness Act (CAFA), 28 U.S.C § 1712. *Id.* at 246-253.

The coupon settlement scrutinized by the Second Circuit in *Moses* contained numerous provisions that raised serious concerns as to the fairness of the settlement and equitability of relief allotted to absent class members. The potential for abuse in the unique context of coupon settlements is well-documented; indeed, the Court noted that CAFA contained specific requirements for such settlements to "curb class action abuse in coupon settlements." *Moses*, 79 F.4th at 247. In *Moses*, attorneys' fees consumed approximately 76% of the total settlement cash

3

fund, and the incentive award far exceeded Class Member cash payment and the correct value of the coupons. *Id.* at 241, 250. Indeed, a substantial portion of the Second Circuit's decision focused on the lower court's misapprehension regarding the application of CAFA's coupon settlement provisions and the resulting error in evaluating attorneys' fees. Specifically, the lower court concluded that the *Moses* settlement was not a coupon settlement—a conclusion the Second Circuit found erroneous—and so viewed attorneys' fees in light of the full face value of the coupons plus the $1.65 million cash settlement fund, calculated at a total value of $5,563,000.00. *Id.* at 241. The Second Circuit held that, to the contrary, attorneys' fees should have been viewed in light of the redemption value of the coupons, which "is likely far lower than the face value attributed in the district court's calculation." *Id.* at 257.

Plaintiffs have discussed at length the fairness, adequacy and reasonableness of the settlement according to the factors set forth in Rule 23(e)(2). (Final Approval Mem., *passim*). Indeed, the Court has already scrutinized the terms of the proposed settlement and required certain revisions (*see* Docket Entry Dated 05/04/2023), which the parties executed accordingly. (Dkt. No. 40). In contrast with the coupon settlement in *Moses,* the parties' settlement agreement in this matter reflects a reasonable, widely-approved and extremely routine attorneys' fee provision and incentive awards that represent a modest portion of Class Member awards and reflect the service performed by the class representatives in this matter.

## II.     The Settlement is Fair, Reasonable, and Adequate

Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members. To make this determination, courts must examine a list of core concerns set forth by the Rule, specifically whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

4

>the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

All four factors must be examined, but none is capable of creating "a favorable presumption on review of the other three." *Moses*, 79 F.4th at 243 (quoting *Roes, 1-2 v. SFBSC Mgmt, LLC*, 944 F.3d 1035, 1049 n.19 (9th Cir. 2019)). The first two factors pertain to procedural fairness and require the Court to analyze the fairness of the process of negotiations that culminated in the settlement. *Moses*, 79 F.4th at 243; *see also McReynolds v. Richard-Cantave*, 588 F.3d 790, 803 (2d Cir. 2023) (*superseded in part by statute*, as discussed in *Moses*). The remaining factors pertain to substantive fairness; these factors overlap in large part with the *Grinnell* factors that governed the settlement fairness analysis prior to the revisions to Rule 23(e), but the new Rule codifies the "core factors" that must be considered. *Moses*, 79 F.4th at 244.

### A. Procedural Fairness is Satisfied

#### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class

Plaintiffs have demonstrated that the Class Representatives—here, the Named Plaintiffs—adequately represented the class, as evidenced by their active participation in the action, resulting in this settlement, and the absence of conflicts with Class Members. (Final Approval Mem. at 8). Plaintiffs have also demonstrated the adequacy of Class Counsel, who are highly experienced in litigating and settling wage and hour actions and have already expended substantial work into advocating on behalf of Plaintiffs. (Final Approval Mem. at 8-9).

#### 2. The Settlement Was Negotiated at Arm's Length

As one of the factors set forth at Rule 23(e)(2), the arms-length nature of settlement negotiations remains relevant to analysis of the procedural fairness of a settlement, but the Second Circuit has clarified that it may no longer operate as a presumption. Simply put, the fact that a settlement was negotiated at arms-length is necessary but not sufficient for a finding of fairness. *Moses*, 79 F.4th at 243.

This factor is satisfied. The parties reached a settlement with the assistance of a neutral mediator after approximately eighteen (18) months of litigation, including formal and informal discovery exchange. (Final Approval Mem. at 9). All settlement negotiations were conducted at arms' length. (*Id.*). Accordingly, and as the Class has been adequately represented by the class representatives and class counsel, procedural fairness is satisfied.

### B.     The Substance of the Settlement is Fair and Equitable

#### 1.     The Relief for Class Members is Adequate and Fair

Rule 23(e) provides that determination of the adequacy and fairness of Class Members' relief take into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)

F.R.C.P. 23(e)(2).

Plaintiffs have set forth the costs, risks and delay of trial and appeal, the defenses and position of Defendants that present risks to Plaintiffs' claims, the benefits of this settlement for all Class Members, and the effectiveness of distribution of settlement relief by an experienced third-party claims administrator. (Prelim. Approval Mem. at 8, 11-13). To enable the Court to further examine the adequacy of class member relief, Plaintiffs provided the manner in which Class

6

Member damages were calculated: in accordance with their workweeks of employment with Defendants, such that their damages are directly correlated with the extent of their unpaid wage damages. (Prelim. Approval Mem. at 7). Members of the FLSA Collective receive a modest enhancement of 25% for each workweek of employment within the FLSA period as compensation for release of their FLSA claims and for their active participation in the action. (*Id.*). Upon the completion of the Notice and Consent to Join mailings, Plaintiffs were able to calculate Class Member allocations, which ranged from a maximum payment of $21,546.37 to a minimum payment of $58.59, with an average payment of $6,431.60. (Suppl. Pelton Decl. ¶ 4, Ex. A; Supplemental Declaration of CPT Group by Jennifer Forst ["Suppl. Forst Decl."] ¶ 16). Under the reversion provisions of the settlement, $318.17 of the total settlement amount will be retained by Defendants. (*Id.*). The agreement also provides for payment of incentive awards of $2,500.00 to each of the two Named Plaintiffs.

**The Attorneys' Fee Award**

The Second Circuit found erroneous the lower court's decision that "Access Codes"[1] distributed to settlement class members were not in fact coupons, and furthermore concluded that, as a result, certain requirements of CAFA had been sidestepped in a way that rendered improper the lower court's evaluation of the fairness of the attorneys' fees. *Moses*, 79 F.4th at 246-47. CAFA instructs courts to apply "heightened scrutiny" to coupon settlements and to "base fee awards on the redemption value of the coupons, rather than their face value," noting the potential for abuse of the class action mechanism in coupon settlements, where attorneys' fees could be calculated based on the face value of coupons, many of which would go in fact unused and which would not

---

[1] The Access Codes provided a free one-month subscription to certain New York Times publications. (*Moses*, 79 F.4th at 240).

7

in fact represent the actual value of the relief allotted to class members. *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 602 (9th Cir. 2021) (discussing CAFA, 28 U.S.C. § 1712); *see also Moses*, 79 F.4th at 247 (discussing *McKinney-Drobnis* and CAFA).

In *Moses*, the lower court accepted the parties' valuation of the total value of the settlement as $5,563,000, consisting of the $1,650,000 cash fund and the remaining $3,913,000 in the face value of the Access Codes.[2] *Moses*, 79 F.4th at 241; *see also Moses v. N.Y. Times Co.*, 20-cv-4658 (S.D.N.Y), Dkt. No. 41 at 68 (class notice stating total value of the settlement fund and Access Codes). Based upon this valuation, the district court concluded that the $1.25 million attorneys' fee represented a reasonable contingency fee of 22.5%. *Moses*, 79 F.4th at 256-7. However, CAFA requires courts to calculate the total value of a settlement based upon the redemption value of the coupons, in other words, "the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a).

As the attorneys' fees are "intertwined with the settlement," in that attorneys' fees are paid from the total settlement fund, the Second Circuit has directed that consideration of such may not be "divorced from the overall evaluation of the fairness of the settlement." *Moses*, 79 F.4th at 236.

The present settlement is all cash, such that the actual value of the relief to class members is simply the total settlement amount, $650,000.[3] (Final Approval Mem. at 10 (noting that "the entirety of the Settlement Amount allocated to Class Members will be paid")). Of this, $411,622.17

---

[2] This is consistent with the Court's recitation of the value of the Access Codes, between three and five dollars, in that the apparent face value of the coupons ($3,913,000) divided by the number of class members (876,606) equals approximately $4.46 per class member.

[3] As no Class Members opted out of the settlement, the full amount of the settlement amount will be paid, less $318.17 in unclaimed FLSA funds that will revert to Defendants. (Suppl. Forst Decl. ¶¶ 14-15).

8

is allocated to Class Members, plus the $2,5000 incentive awards to both of the Named Plaintiffs. (*See* Suppl. Forst Decl. ¶ 15). As previously represented by Plaintiffs, the Class Members' total allocation (not counting the incentive awards) represents approximately 65% of Class Members' total unpaid wage damages. (Pelton Decl. in Support of Prelim. Approval (Dkt. No. 34) ¶ 24). Of this, an estimated $318.17 will revert to Defendants, consisting of the FLSA allocation of one (1) FLSA Collective Member who did not return his Consent to Join form. (Suppl. Forst Decl. ¶ 14). Class Counsel is entitled under the settlement to $213,470.16 in fees and $9,589.50 in costs. (Suppl. Forst Decl. ¶ 15).[4] The Claims Administrator is entitled to fees of $10,000.00. Class Counsel's fees represent 33.33% of the total settlement amount after deduction of their actual litigation expenses.

In wage and hour and other class actions, "attorney's fees totaling one-third of the total settlement amount are routinely approved in the Second Circuit." *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-cv-3284, 2022 U.S. Dist. LEXIS 69998, at *8-9 (E.D.N.Y. Apr. 14, 2022) (citing cases). The Named Plaintiffs agreed to this rate in their retainers (Final Approval Mem. at 13), and thirteen (13) Opt-in Plaintiffs similarly agreed to this rate by returning the Consent to Become a Party Plaintiff form. (Dkt. Nos. 10-16, 19, 20, 23, 24, 27, 28). Class Members were informed of Class Counsel's payment in the Notice of Settlement. (Forst Decl. Exs, A, B). The reasonableness of this payment is further affirmed with a lodestar cross-check, which yields a modest multiplier of approximately 2.35, which does not account for time that Class Counsel will continue to expend on this matter. (Final Approval Mem. at 27). Positive multipliers are "typically

---

[4] The previously-filed Forst Decl. assumed Class Counsel's costs at $10,000, the maximum amount permitted by the settlement (*see* Dkt. No. 44 ¶15); in fact, Class Counsel's costs are slightly lower, at $9,589.50, such that the difference will be paid to Class Members. (Suppl. Forst. Decl. ¶ 15).

applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Doxey v. Cmty. Bank, N.A.*, No. 8:19-cv-919, 2021 U.S. Dist. LEXIS 169735, at *33 (N.D.N.Y. Sept. 8, 2021) (internal quotations omitted). Multipliers of between one and three are well within the range of reasonableness approved in this district. *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-cv-3334, 2023 U.S. Dist. LEXIS 131029, at *29-30 (E.D.N.Y. July 28, 2023) (multiplier of three is "well within the range of this District").

### 2. The Settlement Provides Equitable Treatment for All Class Members

The drafters of the revised Rule 23(e) "singled out, as 'matters of concern… whether the allocation of settlement payments "take[s] appropriate account of differences among their claims, and whether the scope of release may affect class members in different ways that bear on the apportionment of relief,'" such that the Court characterized these matters as "substantively momentous compared to the generally modest incentive payments awarded to class representatives." *Moses*, 79 F.4th at 245 (quoting F.R.C.P. 23(e)(2) Advisory Committee's Notes to 2018 Amendment).

Plaintiffs have discussed in detail the allocation of the settlement among Class Members, which is directly related to individuals' unpaid wage damages (Final Approval Mem. at 10-11), as well as the limited scope of the wage and hour release, which waives Class Members' claims only to the extent that such claims were or could have been asserted in this action. (*Id.* at 11). Members of the FLSA collective were required to affirmatively release their federal claims. (*Id.* at 4). The Court has preliminarily approved these aspects of the settlement, and the current allocation and substantial damages awarded to Class Members is likewise fair and reasonable.

**The Incentive Awards**

10

While the issue of incentive payments "may not have been on the drafters' radar at all," the Second Circuit nevertheless found the existence and extent of any incentive payments to be relevant to consideration of the equitable—not identical—treatment of class members. *Moses*, 79 F.4th at 245. In *Moses*, it is easy to understand the Court's concern regarding the equitable treatment of a settlement that provided a $5,000.00 payment to a class representative while awarding class members either a coupon worth $3-$5 or, upon return of a form, an extremely small *pro rata* share of approximately $395,000.00 remaining of the cash fund after deduction of attorneys' fees and expenses and the incentive award. *Moses*, 79 F.4th at 240. As 10,541 class members (of 876,606) elected to receive cash payments, their *pro rata* allocation would presumably be less than thirty-eight dollars ($38.00). *Id.* While the Court did not express an opinion as to the fairness of such an incentive award, it held that district courts must "ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members" and "reject incentive awards that are excessive compared to the service provided by the class representation or that are unfair to the absent class members." *Id.*, 79 F.4th at 245.

Here, the incentive awards reflect the service performed by the class representatives, who undertook real professional risk in suing a former employer, particularly considering that both class representatives continue to work in the security industry. (Pelton Decl. in Support of Final Approval [Dkt. No. 43] ¶ 18). The Named Plaintiffs provided evidence and information to Class Counsel and participated in the lengthy mediation that resulted in settlement. (Final Approval Mem. at 20). For their services, the Named Plaintiffs will each receive an award of $2,500—less than half of the average Class Member allocation. As such, the award is clearly not excessive, as

11

it compensates the class representatives for the risks they undertook and the services rendered to the class without overshadowing Class Member awards.

### C. Fairness Is Satisfied Under the *Moses* Analysis

The Second Circuit's thorough discussion of whether the settlement in *Moses* should be characterized as a coupon settlement highlights the unique features of coupon settlements that make them particularly ripe for abuse. One such feature is the difficulty in evaluating the true value of any such settlement; in *Moses*, out of over 800,000 Class Members, 10,541 elected to receive a cash payout, and the rest would receive an Access Code—which could not be used in combination with existing subscriptions—worth between three and five dollars. *Moses*, 79 F.4th at 240. It is common sense that there are likely tens of thousands, if not hundreds of thousands, of class members who would not use the Access Codes at all, given the "limited utility" of the codes and challenges of actually implementing them; moreover, use of the codes had the potential to actually benefit Defendants as a "promotional opportunity" driving traffic to the publication. *Id.*, 79 F.4th at 250-51.

Here, as in most wage and hour settlements, the value of the settlement is evident on its face. Class Member relief consists of check payments representing an average of over $6,000 per Class Member. The incentive awards represent less than half the average class member payout and reasonably compensate the Named Plaintiffs for the risks they undertook and services they performed. All Plaintiffs and Class Members have been notified of the attorneys' fee payment, and the true value of the attorneys' fees, in comparison with the total settlement amount, is easily ascertained and represents a standard contingency fee that is merited here. Therefore, the decision of the Second Circuit in *Moses* in no way should inhibit approval of this settlement; indeed, those

12

settlement provisions that raised concerns in *Moses* are standard, reasonable and transparent in light of the significant value this settlement provides to Class Members.

## CONCLUSION

For the reasons set forth above and for the reasons set forth in Plaintiffs' Motion for Final Approval of Class Settlement, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Class Settlement and enter the Revised Proposed Order attached to the Supplemental Pelton Declaration.

Dated: New York, New York
      October 17, 2023         **PELTON GRAHAM LLC**

By:   */s/ Brent E. Pelton*
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the FLSA Collective and Settlement Class*

13