UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LUIS LOPEZ and BOBBY MORRISON
*individually and on behalf of all others similarly situated,*

                              Plaintiffs,                **ORDER**
                                                     22-CV-1990-SJB
                      - against -

UNIVERSAL PROTECTION SERVICE, LLC d/b/a
ALLIED UNIVERSAL SECURITY SERVICES and
ALLIEDBARTON SECURITY SERVICES, LLC

                              Defendants.
-------------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

### <u>ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF FLSA COLLECTIVE AND CLASS SETTLEMENT AND CLASS COUNSEL'S FEES AND COSTS</u>

      For the reasons explained herein, the Court grants Plaintiffs' Motion for Final Approval of FLSA Collective and Class Settlement and for Approval of Class Counsel's Fees and Costs (Pls.' Mot. for Settlement Approval dated Sept. 12, 2023 (the "Motion"), Dkt. No. 42), the terms of which are set forth in the parties' settlement agreement. (Revised Settlement Agreement dated May 18, 2023 (the "Settlement Agreement"), attached as Ex. A to Letter in Resp. to May 4 Hearing ("Revised Settlement Submission"), Dkt. No. 39).

      1.      Plaintiffs Luis Lopez and Bobby Morrison (the "Plaintiffs" or "Named Plaintiffs") initiated this lawsuit alleging that Defendants Universal Protection Service LLC d/b/a Allied University Security Services and AlliedBarton Security Services LLC (collectively, the "Defendants") failed to pay their Operation Assistants, Tour Supervisors, and Construction Leads at LaGuardia International Airport for all of the

time that they worked each day, resulting in unpaid regular "gap-time" wages in violation of the New York Labor Law ("NYLL") and unpaid overtime premiums for hours worked over forty (40) in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and NYLL. (*See generally* Am. Class and Collective Action Compl. dated Mar. 15, 2023, Dkt. No. 32). Plaintiffs further allege that Defendants failed to provide accurate wage statements reflecting all their hours worked each pay period, in violation of the NYLL. (*Id.* ¶ 4).

2. The Court held a hearing regarding preliminary approval of the proposed settlement on May 4, 2023, during which the Court discussed revisions that were needed to the parties' original settlement agreement and release. (Minute Entry and Order dated May 4, 2023).

3. The parties re-executed and re-submitted the Settlement Agreement on May 18, 2023. The Court preliminarily approved the revised Settlement Agreement on May 30, 2023. (Order Granting Pls.' Mot. for Prelim. Approval of Class Settlement dated May 30, 2023 (the "Preliminary Approval Order"), Dkt. No. 40).

4. The settlement is a hybrid class and collective action resolution; it contemplates two procedural vehicles operating simultaneously: (a) a class action settlement, pursuant to Federal Rule of Civil Procedure 23, resolving NYLL claims; and (b) a collective action settlement to resolve FLSA claims. To participate in the FLSA collective, employees other than the Named Plaintiffs were required to affirmatively consent, or "opt in," to the collective. Employees who chose not to opt in retain their rights to bring their own FLSA claims. All FLSA Collective Members are also Class Members; however, not all Class Members are FLSA Collective Members. (Settlement Agreement ¶ 2.17).

5. The Approval Order preliminarily certified the following NYLL class pursuant to Rule 23(e) for settlement purposes ("Settlement Class," the "Class," or "Class Members"): All persons formerly employed as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between August 23, 2015 and December 31, 2021. (Prelim. Approval Order ¶ 18). The Court determined that the Settlement Class met all the criteria for class certification under Fed R. Civ. P. 23(a) and 23(b)(3). (*Id.* ¶¶ 19, 20). And the Court appointed Pelton Graham LLC as counsel to represent the Class ("Class Counsel"). (*Id.* ¶ 21).

6. The Court also conducted a preliminary *Cheeks* review of the proposed settlement of the FLSA claims for the proposed collective action encompassing all persons formerly employed as Operation Assistants, Tour Supervisors, and/or Construction Leads at LaGuardia International Airport by Defendants at any time between April 7, 2019 and December 31, 2021 (the "FLSA Collective" or "FLSA Collective Members"). (*Id.* ¶¶ 10, 22).

7. The Court approved the revised Notice of Class and Collective Action Settlement, (Notice of Class and Collective Action Settlement ("Notice"), attached as Ex. B to Revised Settlement Submission), and directed its distribution to the Class and Collective Members. (Prelim. Approval Order ¶ 26).

8. On June 19, 2023, the Settlement Administrator, CPT Group, Inc. ("CPT"), mailed the Notice packages to the list of sixty-four (64) Class Members provided to CPT by Defendants. (Decl. of Jennifer Forst dated Sept. 12, 2023 ("Forst Decl."), Dkt. No. 44 ¶ 4). Of the sixty-four (64) Class Members, thirty-two (32) were potential members of the FLSA Collective, and their Notice packets also included a

Consent to Join Form in order for them to participate in the FLSA Collective, to the extent they had not already opted into the case. (*Id.*; Settlement Class Notice Packet, attached as Ex. A to Forst Decl.). The Settlement Administrator also emailed the Notice packets to Class Members and FLSA Collective Members. (Forst Decl. ¶ 7).

9. The Notices advised Class Members and FLSA Collective Members of applicable deadlines and other events, including the Final Approval Hearing, how Class Members and FLSA Collective Members could participate in the settlement, and how Class Members and FLSA Collective Members could obtain additional information regarding the case and settlement. (*See generally* Settlement Class Notice Packet; FLSA Collective Class Notice Packet, attached as Ex. B to Forst Decl.).

10. The Court concludes that the Notice fairly and adequately advised eligible employees of the nature of the action, Class Members' right to exclude themselves and object to the settlement, the right of eligible employees to opt into and join the collective, the right of employees to be represented by their own counsel, and their right to appear at the final fairness hearing. The Court concludes that the Notice and its distribution complied with Fed. R. Civ. P. 23 and FLSA, 29 U.S.C. § 201.

11. No Class Members submitted a Request for Exclusion and no Class Members objected to the Settlement, resulting in a 100% participation rate among the Class Members. (Forst Decl. ¶¶ 11, 12, 14).

12. The Settlement Administrator received twenty-five (25) timely filed and valid Consent to Join Forms from FLSA Collective Members. (Forst Decl. ¶ 13). In addition, Plaintiffs' counsel received one (1) late Consent to Join Form, which Defendants agreed to accept. (Harewood Consent to Join Form dated Oct. 11, 2023, Dkt. No. 62; Suppl. Decl. of Brent E. Pelton in Supp. of Mot. for Final Approval dated

4

Oct. 17, 2023 ("Suppl. Pelton Decl."), Dkt. No. 63 ¶ 4). Inclusive of the individuals who had previously opted in (*i.e.*, the "Opt-In Plaintiffs" who signed the Settlement Agreement),[1] a total of thirty-one (31) out of thirty-two (32) FLSA Collective Members agreed to participate in the FLSA Collective portion of this case and the proposed settlement. (Suppl. Pelton Decl. ¶ 5; Suppl. Decl. of Jennifer Forst in Supp. of Mot. for Final Approval dated Oct. 17, 2023 ("Suppl. Forst Decl."), Dkt. No. 63-2 ¶ 14).

13. The parties agreed to settle for a "Total Settlement Amount" fund of up to Six Hundred and Fifty Thousand Dollars ($650,000.00). (Settlement Agreement ¶ 2.29). After attorney's fees and expenses, any amounts that revert to Defendants, fees for settlement administration, the employer's portion of payroll taxes and enhancement awards for the Named Plaintiffs, the remaining funds (the "Net Settlement Amount") will be allocated among the Class and FLSA Collective members, (*id.* ¶ 2.31), who will receive a "Settlement Check." (*Id.* ¶ 2.27).

14. The Settlement Agreement includes a reversionary provision. Because no Class Members opted out or objected to the Settlement Agreement, the entire portion of the Net Settlement Amount allocated to Class Members will be paid. $318.17 of the fund will revert to the Defendants because one FLSA Collective Member did not opt-into the collective. (Suppl. Forst Decl. ¶¶ 14, 15). The Funded Settlement Amount will therefore be $649,681.83. (*Id.* ¶ 15). The one FLSA Collective Member who chose not to opt-in to the action will not release his or her FLSA claims. (*See* Settlement Agreement ¶ 3.9(c)).

15. The Settlement Agreement provides that all Opt-In Plaintiffs will release

---

[1] 15 employees, including the Named Plaintiffs, previously opted-in, joined the collective, and signed the Revised Settlement Agreement. (Agreement at 18–19).

5

all federal wage claims under FLSA with prejudice. (Settlement Agreement ¶ 5.2). A settlement that resolves FLSA claims with prejudice must be approved by the Court. To approve such a settlement, the Court must find that the agreement is fair, *i.e.*, that it "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing, USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (alteration and quotations omitted); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (requiring court approval in FLSA actions "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees").

16. In determining whether a FLSA settlement is fair, the Court considers: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)); *see also Cheeks*, 796 F.3d at 206.

A. <u>Range of Recovery</u>

17. As the Court previously found in granting preliminary approval, the settlement amount as reflected in the Settlement Agreement provides the Class and Collective Action Members with a recovery that is fair, reasonable, and adequate,

particularly in light of the litigation risks faced by both parties. (Prelim. Approval Order ¶ 24).

18. The parties have determined that the Total Settlement Amount will be $649,681.83, with $318.17 reverting to Defendants. (Suppl. Forst Decl. ¶ 15). Even subtracting attorney's fees of one-third ($213,470.16), costs of $9,589.50,[2] incentive awards totaling $5,000, and administration costs of $10,000, the Net Settlement Amount is approximately 65% of the value of the Class and Collective's total unpaid wage claims. (*See* Preliminary Approval Order ¶ 24; *see also* Forst Decl. ¶ 15; Suppl. Pelton Decl. ¶ 6).[3]

19. The maximum recovery for the claims of all class and collective members would be $1,780,010.30 (of which $634,230.49 would be the alleged unpaid regular and overtime premium wages). (Decl of Brent E. Pelton in Supp. of Pls.' Mot. for Prelim. Approval dated Mar. 21, 2023, Dkt. No. 34 ¶ 22). As such, the Total Settlement Amount represents full recovery of Plaintiffs' unpaid wages exclusive of liquidated damages. The Net Settlement Amount to be paid directly to Class Members represents approximately 65% of the total unpaid wage damages.

20. These percentages represent a recovery that is fair and reasonable. Other FLSA settlements with similar—or even smaller—percentages of recovery have

---

[2] Although the Settlement Agreement provided for reimbursement of litigation costs up to $10,000, Class Counsel's actual litigation costs total $9,589.50. (Pelton Decl. ¶ 43).

[3] According to the Settlement Administrator, prior to the deduction of employee-side state and federal taxes, the average settlement payment is estimated to be $6,431.60, with the highest settlement payment estimated to be $21,546.37 and the lowest settlement payment estimated to be $58.59. (Suppl. Pelton Decl. ¶ 6; Suppl. Forst Decl. ¶ 16).

7

been approved by courts in this Circuit. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (approving settlement amount of "just under 13% of Plaintiff's potential recovery at trial"); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

B. <u>Attorney's Fees and Costs and Remaining Factors</u>

21. The motion seeks attorney's fees of $213,470.16, (Settlement Agreement ¶ 4.5), and costs of $9,589.50. (Suppl. Pelton Decl. ¶ 6).

22. The Court finds that the attorney's fees and costs portion of the settlement is reasonable and commensurate with the degree of success obtained. *See Fisher*, 948 F.3d at 606–07. The amount of requested attorney's fees and costs equals one-third of the settlement fund of $650,000.00. (Agreement ¶¶ 4.1, 4.5). The percentage sought is in line with what courts have approved. *See, e g.*, *Cumbe v. Peter Pan Donuts & Pastries Inc.*, No. 16-CV-392, 2018 WL 3742689, at *1 (E.D.N.Y. May 15, 2018), *report and recommendation adopted*, 2018 WL 3742634, at *1 (May 30, 2018); *Karic v. Major Auto. Cos.*, No. 09-CV-5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving attorney's fees in the amount of one-third of the settlement fund and noting that "[c]ourts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund").

23. The Court notes also that the reversionary amount here is *de minimus*, and so the gross amount of the fund is almost entirely being paid by Defendants.

24. The $9,539.50 in costs sought are for the filing fee, costs incurred in serving Defendants, costs of hiring a data entry team to transcribe payroll records, and

8

fees of $4,950.00 to JAMS for mediation services. (Decl. of Brent E. Pelton in Supp. of Mot. for Final Approval dated Sept. 12, 2023 ("Pelton Decl."), Dkt. No. 43 ¶ 43; Class Counsel Litigation Expenses ("Litigation Expenses"), attached as Ex. B to Pelton Decl.). Plaintiffs' counsel substantiated these costs by providing invoices that describe the costs incurred, including dates and dollar amounts. (Litigation Expenses at 2–4).

25. The Court also concludes that the other factors support *Cheeks* approval. There is no evidence of collusion. The settlement is fair (given the amount of recovery and the risks of litigation, which are discussed *infra* ¶ 30). And there are no provisions that otherwise offend fairness. For example, the release is limited to wage and hour claims and is not overbroad, (Settlement Agreement ¶¶ 5.1–5.4), and thus, the release provision is appropriately narrow. *See Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."). There is also no confidentiality or other similarly offensive provision in the Settlement Agreement.

26. With respect to the fairness of the Class resolution, Rule 23(e)(2) provides that the Court may only approve a class settlement upon "finding that it is fair, reasonable, and adequate." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(2)). That determination must be made by the Court's evaluation of four "primary procedural considerations and substantive qualities" that "always matter" in determining "whether to approve a settlement proposal." *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Those four considerations are whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the

proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . [and] (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The first two factors—all of which must be considered "holistically"—are "procedural in nature," while "the latter two guide the substantive review of a proposed settlement." *Moses*, 79 F.4th at 242–43.[4]

27. That is, there are "two core factors" that must be considered in evaluating the "substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Id.* at 244. But those factors cannot be evaluated without consideration of proposed attorney's fees and incentive awards. *Id.* at 244 ("[T]he district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement *in tandem*" (emphasis added) (quotations omitted)).

28. The Named Plaintiffs adequately represented the class, as evidenced by their active participation in the action, which resulted in this settlement, and the absence of conflicts with Class Members. Class Counsel have also adequately represented the Class as evidenced by the strength of and participation in the settlement.[5] The parties reached this settlement only after engaging in sufficient investigation and informal exchange of documents, which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions. The

---

[4] Courts in the Second Circuit may no longer apply a presumption of fairness to proposed settlements that arise from arm's-length negotiations. *Moses*, 79 F.4th at 243. The Court does not therefore presume that the settlement is fair, but rather reviews the negotiation history and dynamics holistically and in light of the Rule 23(e)(2) factors.

[5] The Notice was mailed on June 19, 2023, setting the deadline to submit disputes, request exclusion, object and submit Consent to Join Forms as August 18, 2023. (Forst Decl. ¶ 7).

parties reached a settlement with the assistance of a neutral mediator after approximately eighteen (18) months of litigation, including formal and informal discovery exchange.

29. As the Court previously found in granting preliminary approval, the settlement amount as reflected in the Settlement Agreement provides the Class Members with a recovery that is fair, particularly in light of the litigation risks faced by both parties. (Preliminary Approval Order ¶ 24). As such, the Class recovery is fair and adequate. The allocation formula reflects the strengths of each individual's claim, as it takes into account the relative strengths and weaknesses of class claims.

30. The Settlement Agreement reflects Class Counsel's reasonable assessment of the weight of the risks that would be incurred by further litigating this matter. These risks include the assumptions as to off-the-clock work that are key to Plaintiffs' theory of liability, which Defendants strongly contest. Defendants assert that they had policies in place to ensure full compensation, including policies regarding meal break coverage, and that any unpaid time accrued on an individualized basis, such that class treatment would be inappropriate. Further litigation would entail additional expense and delay, including depositions, class certification and de-certification motion practice, and a complicated trial. As such, resolution of liability issues and damages calculations are uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty.

31. The Court approves Class Counsel's request for attorney's fees of $213,470.16, which represents one-third of the Total Settlement Amount after subtracting actual litigation costs. This amount—as noted earlier—is fair for the

purposes of *Cheeks* scrutiny, and the same result inures for the purposes of the Class Settlement. That is because the amount is reasonable and commensurate with the degree of success obtained for the Class and Collective Members. See *Fisher*, 948 F.3d at 606–07 (2d Cir. 2020) ("[A]s noted by the Supreme Court, 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'" (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). In wage and hour and other class actions, "attorney's fees totaling one-third of the total settlement amount are routinely approved in the Second Circuit." *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284, 2022 WL 2467541, *4 (E.D.N.Y. Apr. 14, 2022) (collecting cases).

33. The Court also awards Class Counsel reimbursement of their litigation costs in the amount of $9,589.50, which is to be paid from the Total Settlement Amount.

33. "Rule 23(e)(2)(D) directs courts to approve a settlement proposal only if it 'treats class members equitably relative to each other,'" *Moses*, 79 F.4th at 253 (quoting Rule 23(e)(2)(D)), and incentive awards must be evaluated under that rubric. *See id.* at 254–55 (recognizing propriety of "fair and appropriate" incentive awards). The incentive awards for the Named Plaintiffs reflect the service they performed as Class representatives. The Named Plaintiffs undertook professional risks in suing their former employer, provided evidence and information to Class Counsel, and participated in the lengthy mediation that resulted in settlement. For their services, the Named Plaintiffs will each receive an award of $2,500—less than half of the average Class Member allocation. As such, the award is not excessive, as it compensates the

Named Plaintiffs for the risks they undertook and the services rendered to the Class, without overshadowing Class Member awards. The Court finds reasonable incentive awards to the two (2) Named Plaintiffs in the amount of $2,500.00 each, for a total of $5,000.00.

34. These amounts shall be paid from the settlement. Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, as well as the supplemental briefing and the complete record in this matter, for good cause shown, the Court finds that the FLSA settlement satisfies the requirements of *Cheeks* and its progeny and the NYLL class action settlement is fair, reasonable, and adequate, and satisfies the requirements of Rule 23(e). The Court grants the Motion for Final Approval including (1) an award of attorney's fees of $213,470.16 to Class Counsel; reimbursement of actual litigation costs in the amount of $9,589.50 to Class Counsel; an incentive award of $2,500.00 to both Named Plaintiffs (for a total of $5,000.00); costs of $10,000.00, with all of the foregoing to be paid from the Funded Settlement Amount.

35. The Court retains jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired.

36. The claims of class and collective members are dismissed with prejudice as set forth in the Revised Settlement Agreement.

37. The Clerk of Court is directed to enter judgment consistent with this order and to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara  January 10, 2024*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York